770 So.2d 1144 (2000)
David MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. SC93792.
Supreme Court of Florida.
August 31, 2000.
Rehearing Denied October 24, 2000.
*1146 Nancy A. Daniels, Public Defender, and W.C. McLain, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
Appellant was charged and convicted of first-degree murder and aggravated battery, and the trial court imposed the death sentence in line with the jury's seven-to-five vote.[1] We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const.
On March 5, 1997, Linda Fullwood and the victim, Albert Floyd, went to sleep on the floor of a covered doorway of a Jacksonville church. Floyd slept toward the outside and Fullwood closer to the building. Fullwood awoke to a man beating Floyd with a pipe or stick and screamed. The assailant then started hitting Fullwood.
*1147 Jimmy Hall testified that he was walking along Duval Street at the time in question when he heard someone yelling. Hall ran behind the church and saw a man beating two people with a pipe. Hall stated that the pipe was four or five feet long with a bent end, the assailant used both hands to swing it, and that blood flung off the pipe onto the ceiling and walls. Hall yelled at the assailant to stop, the assailant turned and started toward Hall, but then fled.
Consequent to the attack, the victim died from three blows to the head. The victim's autopsy revealed three head lacerations that fractured the skull and penetrated into the brain. The injury was consistent with blows from a pipe, any one of which could have resulted in unconsciousness and death.[2]
Two and one-half months later, appellant told a police officer in Louisiana that he killed someone in Jacksonville. Miller met with a detective at the police station, was advised of his rights, and told the detective that he had beaten a man to death while attempting a robbery. Appellant stated that the victim was sleeping, that he intended to knock him unconscious with a five-to-six-foot pipe that was curved at the end, that a woman woke up and started screaming, and that he struck her too. A fourth person then appeared, told appellant to stop, and appellant fled. Miller further stated that he turned himself in because he thought the victim's family was looking for him, his conscience bothered him, he knew that what he did was wrong, and that he wanted to apologize to the victim's family.
Appellant also told detectives that on the night in question he drank three or four quarts of beer, smoked a $10 rock of crack, and then went looking for more money and alcohol. He found a dented six-foot pipe in a park and walked behind a building where he saw a man sleeping under a blanket on a covered concrete porch. Appellant decided to strike the victim to disable him and avoid a struggle before robbing him, although he did not intend to kill him.
In Jacksonville, another detective interviewed appellant and appellant showed him the crime scene. Appellant repeated his story and walked detectives through the crime. He explained that he struck the victim to avoid resistance because he knew that homeless people carry knives and guns, and he did not want to get injured.
Appellant testified that he did not decide to rob the victim until he was actually standing over him with the pipe. He acted without thinking because of his mental state and he battered Fullwood instinctively when confronted by her. When Hall approached, appellant realized his actions and walked away.
During the penalty phase, appellant presented familial, expert, and his own testimony. Appellant's mother, sister, and brother testified about his family background-including abuse by his father when he was a child-and drug and alcohol abuse as an adult. Furthermore, Dr. Harry Krop, a clinical psychologist, testified regarding his findings as to appellant, which included a diagnosis of alcohol and drug abuse, frontal lobe defects, and schizoid personality traits. Appellant testified that he was greatly affected by the fact that his parents never told him that they loved him, although he subsequently learned that his mother loved him as evidenced by her hard work in raising the children. He also expressed religious beliefs and stated that he would accept responsibility for his actions, he apologized to the decedent's family and Fullwood, and he asked for forgiveness.
The first issue is whether the trial court erred in denying appellant's motion *1148 for judgment of acquittal (JOA) on premeditation. We hold that the trial court properly denied appellant's JOA on premeditation under well-settled Florida precedent.
A special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
State v. Law, 559 So.2d 187, 188 (Fla.1989) (citations omitted). In Law, this Court further elaborated on the standard in circumstantial evidence cases as follows:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Id. at 189 (citations and footnote omitted).
Premeditation is "more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." Norton v. State, 709 So.2d 87, 92 (Fla.1997)(quoting Coolen v. State, 696 So.2d 738, 741 (Fla.1997)). Premeditation may be inferred based on circumstantial evidence such as
[1] the nature of the weapon used, [2] the presence or absence of adequate provocation, [3] previous difficulties between the parties, [4] the manner in which the homicide was committed and [5] the nature and manner of the wounds inflicted. [6] It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and [7] the probable result to flow from it insofar as the life of the victim is concerned.
Jackson v. State, 575 So.2d 181, 186 (Fla.1991)(quoting Sireci v. State, 399 So.2d 964, 967 (Fla.1981)). To prove premeditation by circumstantial evidence, "the evidence relied upon by the State must be inconsistent with every other reasonable inference that could be drawn." Norton, 709 So.2d at 92 (quoting Holton v. State, 573 So.2d 284, 289 (Fla.1990)).
In the present case, viewing the facts in a light most favorable to the State supports finding premeditation and refutes appellant's hypothesis of innocence-that he merely intended to knock out the victim. Viewing the evidence in support of the verdict reveals that (1) the weapon (metal pipe) was not inherently dangerous, but used in the manner appellant chose, it became a weapon likely to cause death or at least significant bodily injury; (2) the victim was sleeping and did not provoke a reactive killing; (3) there were no prior difficulties between the parties; (4) appellant swung the metal pipe, with both hands, at full force, focusing on the victim's stationary head, with repeated blows, any one of which could have caused death; (5) the force of the blows fractured the victim's skull and exposed his brain; (6) appellant had sufficient time to be conscious of the deed he committed because he picked up the pipe to use in a robbery, walked around the building looking for a *1149 victim, and stood over the victim a short while before he decided to repeatedly strike him in the head; and (7) the probable result of such an attack to the victim would be death or, at a minimum, significant trauma to the head. Because the State's evidence of unprovoked, focused lethal force is inconsistent with appellant's claim that he merely desired to knock the victim out, the trial court properly denied appellant's JOA.
We reject the State's invitation for this Court to eliminate the reasonable hypothesis of innocence standard applied to JOAs in circumstantial evidence cases. This Court directly addressed this issue in State v. Law and rejected the State's argument to do away with the special standard and upheld the familiar test that in circumstantial evidence cases the State must submit evidence that is inconsistent with any reasonable theory of innocence. See id. at 189. Our rationale was that "[i]f the rule were not applied in this manner, a trial judge would be required to send a case to the jury even where no evidence contradicting the defendant's theory of innocence was present, only for a verdict of guilty to be reversed on direct appeal." Id. In addition, the circumstantial evidence test guards against basing a conviction on impermissibly stacked inferences. See Gustine v. State, 86 Fla. 24, 28, 97 So. 207, 208 (1923)(reversing conviction because "[o]nly by pyramiding assumption upon assumption and intent upon intent can the conclusion necessary for conviction be reached"); Brown v. State, 672 So.2d 648, 650 (Fla. 4th DCA 1996)("Circumstantial evidence is insufficient when it requires pyramiding of assumptions or inferences in order to arrive at the conclusion of guilt."). Thus, we uphold the circumstantial evidence standard we applied in Law.
The second question raised by appellant is whether the trial court erred in declining to find certain nonstatutory mitigating circumstances. We hold that the trial court did not commit reversible error in declining to find three proposed mitigating circumstances: (1) lack of intent to kill, (2) an abusive childhood, and (3) long-term alcohol and drug abuse. In general, trial courts must expressly evaluate in writing each proposed mitigating circumstance and determine whether each factor is supported by the greater weight of the evidence and, if so, whether it is truly mitigating. See Campbell v. State, 571 So.2d 415, 419 (Fla.1990). Uncontroverted evidence of such a circumstance must be accepted by the trial court as proving the factor; however, a trial court may reject a proposed mitigator if the record contains competent, substantial evidence otherwise. See Mahn v. State, 714 So.2d 391, 400-01 (Fla.1998).
In the instant case, the trial court did not abuse its discretion in declining to find the proposed mitigating circumstance of lack of intent to kill. It is apparent based on the evidence presented in issue I that there is substantial evidence that appellant used lethal force that was likely to result in death. See Mason v. State, 438 So.2d 374, 379 (Fla.1983)(where evidence conflicts as to the existence of a mitigator, this Court will not interfere with the trial judge's decision).
Next, the trial court did not abuse its discretion in declining to find the proposed mitigator of an abusive childhood. Miller's mother and sister testified that his father administered corporal punishment to the children once every six-to-eight months. Appellant did not present evidence of injuries or hospitalization resultant from the punishments. Moreover, the punishments ceased when appellant was thirteen years old, when his father ceased living with the family. See Sochor v. State, 619 So.2d 285, 293 (Fla.1993). Compare Campbell, 571 So.2d at 419 (concluding that the trial court wrongly rejected defendant's proposed child abuse mitigator because record revealed "extreme abuse" such as defendant's requiring hospitalization after being hit with a telephone, that he was covered with bruises, and that he *1150 was subject to such mistreatment that he was declared dependent). On this record, we cannot say that the trial court abused its discretion in declining to find this mitigating circumstance.
Finally, we hold that the trial court abused its discretion in declining to find appellant's proposed mitigator that he suffers from long-term alcohol and substance abuse. Appellant testified that he abused alcohol and drugs throughout his adult life. His familial witnesses testified that he had a drinking problem and Dr. Krop testified that his substance abuse aggravated a frontal lobe disorder. Critically, the State concedes that appellant suffered such addictions. Because appellant's evidence of alcohol and substance abuse is uncontested, the trial court erred in declining to find this mitigating factor. See Mahn, 714 So.2d at 400-01. Nevertheless, we find this error to be harmless given the weighty aggravating factors present. See Pietri v. State, 644 So.2d 1347, 1354-55 (Fla.1994)(applying harmless error analysis to trial court's erroneous inclusion of aggravating factor). This conclusion is supported by testimony that appellant's substance abuse started when he was an adult, that his family tried to help him end the abuse, but that he rejected their help.
The third issue is whether the sentence is proportionate. Proportionality review requires that this Court "consider the totality of the circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances." Terry v. State, 668 So.2d 954, 965 (Fla.1996)(quoting Porter v. State, 564 So.2d 1060, 1064 (Fla.1990)). We hold that the death sentence is proportionate in this case based on the imposition of the sentence in other cases. See, e.g., Consalvo v. State, 697 So.2d 805, 820 (Fla.1996)(holding death penalty proportionate where there were two aggravating factorsavoiding arrest and commission during course of a burglarywith some nonstatutory mitigation); Ferrell v. State, 680 So.2d 390, 391-92 (Fla.1996)(affirming death sentence after proportionality review where defendant had one aggravator consisting of a prior second-degree murder, with several nonstatutory mitigating circumstances); Pope v. State, 679 So.2d 710, 713, 716 (Fla.1996)(holding death penalty proportionate where there were two aggravating factors-the murder was committed for pecuniary gain and defendant had been convicted of a prior violent felony-and where there were two statutory and three nonstatutory mitigating circumstances); Johnson v. State, 660 So.2d 637, 641, 648 (Fla.1995)(finding defendant's death sentence proportionate where there were three aggravating factors-prior violent felony, commission of murder for financial gain, and heinous, atrocious, or cruel murder-and fifteen mitigating factors); Melton v. State, 638 So.2d 927, 930 (Fla.1994)(holding death penalty proportionate where there were two aggravating factors-murder was committed for pecuniary gain and defendant had been convicted of a prior violent felony-and where the trial court found nonstatutory mitigation that was not compelling). Thus, we conclude that the death sentence in this case is proportionate to other cases where the sentence has been imposed.
We hereby affirm appellant's conviction and sentence.
It is so ordered.
SHAW, HARDING and QUINCE, JJ., concur.
WELLS, C.J., concurs in part and dissents in part with an opinion.
LEWIS, J., concurs as to conviction and concurs in result only as to sentence.
ANSTEAD and PARIENTE, JJ., concur as to conviction and dissent as to sentence.
*1151 WELLS, C.J., concurring in part and dissenting in part.
I concur with the majority as to guilt. I concur in result only as to the sentence.
I concur with the majority that uncontroverted "factual" evidence must be accepted by the trial judge as proving a mitigating factor. Majority op. at 1149. However, I point out that, under this Court's precedent, the trial judge can reject expert opinion evidence even if uncontroverted. See Foster v. State, 679 So.2d 747, 755 (Fla.1996); Wuornos v. State, 644 So.2d 1000 (Fla.1994).
I dissent from the majority's holding that the "trial judge court abused its discretion in declining to find appellant's proposed mitigator that he suffers from longterm alcohol and substance abuse." I read the trial judge's sentencing order to mean that the trial judge considered the defendant's long-term alcohol and substance abuse but did not find that it was mitigating under all the circumstances presented in respect to this defendant. I believe such a determination to be within the discretion of the trial court. The trial court must "consider" all matters of character which are presented in respect to a defendant, but, being the sentencer, the trial court is not and should not be required to find every such circumstance to mitigate against a sentence of death. See Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Foster, 679 So.2d at 755.
NOTES
[1] In support of the death sentence, the trial court found the following aggravating circumstances: (1) prior violent felony conviction; and (2) the homicide was committed during an attempted robbery and for pecuniary gain (merged). The trial court did not find any statutory mitigators, but found the following nonstatutory factors: (1) the victim was rendered unconscious immediately and did not suffer-very little weight; (2) the alternate sentence for murder is life without possible release-very little weight; (3) appellant turned himself in-slight weight; (4) exhibited remorse and apologized to the victim's family-some weight; (5) did not resist and cooperated with the police investigation-some weight; (6) suffered emotional distress over the death of his sister and a close cousin-little weight; (7) has a frontal lobe deficiency that affects inhibition and impulse control-modest weight; (8) would likely adapt well to long-term incarceration-very little weight; (9) was loved by his family and had performed good deeds-slight weight; and (10) had adjusted well while incarcerated-slight weight. The trial court considered but rejected the following nonstatutory mitigators, including that appellant: (1) did not intend to kill the victim; (2) suffered an abusive childhood and his father was an alcoholic; (3) suffered his own alcohol and drug problem as an adult, and (4) supported himself by working through labor pools.
[2] Fullwood had a concussion, one broken arm, two broken fingers, and several fractured ribs.