926 So.2d 1243 (2006)
David MILLER, Jr., Appellant,
v.
STATE of Florida, Appellee.
David Miller, Jr., Petitioner,
v.
James R. McDonough, etc., et al., Respondents.
Nos. SC04-892, SC05-472.
Supreme Court of Florida.
March 23, 2006.
*1246 Robert A. Norgard, Bartow, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
David Miller, Jr., a prisoner under a sentence of death for a conviction of first-degree murder, appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. After review, we affirm the denial of relief and deny the petition for writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
The underlying circumstances of the case are set out in this Court's decision in Miller's direct appeal:
On March 5, 1997, Linda Fullwood and the victim, Albert Floyd, went to sleep on the floor of a covered doorway of a Jacksonville church. Floyd slept toward the outside and Fullwood closer to the building. Fullwood awoke to a man beating Floyd with a pipe or stick and screamed. The assailant then started hitting Fullwood.
Jimmy Hall testified that he was walking along Duval Street at the time in question when he heard someone yelling. Hall ran behind the church and saw a man beating two people with a pipe. Hall stated that the pipe was four or five feet long with a bent end, the assailant used both hands to swing it, and that blood flung off the pipe onto the ceiling and walls. Hall yelled at the assailant to stop, the assailant turned and started toward Hall, but then fled.
Consequent to the attack, the victim died from three blows to the head. The victim's autopsy revealed three head lacerations that fractured the skull and penetrated into the brain. The injury was consistent with blows from a pipe, any one of which could have resulted in unconsciousness and death.
Two and one-half months later, appellant told a police officer in Louisiana *1247 that he killed someone in Jacksonville. Miller met with a detective at the police station, was advised of his rights, and told the detective that he had beaten a man to death while attempting a robbery. Appellant stated that the victim was sleeping, that he intended to knock him unconscious with a five-to-six-foot pipe that was curved at the end, that a woman woke up and started screaming, and that he struck her too. A fourth person then appeared, told appellant to stop, and appellant fled. Miller further stated that he turned himself in because he thought the victim's family was looking for him, his conscience bothered him, he knew that what he did was wrong, and that he wanted to apologize to the victim's family.
Appellant also told detectives that on the night in question he drank three or four quarts of beer, smoked a $10 rock of crack, and then went looking for more money and alcohol. He found a dented six-foot pipe in a park and walked behind a building where he saw a man sleeping under a blanket on a covered concrete porch. Appellant decided to strike the victim to disable him and avoid a struggle before robbing him, although he did not intend to kill him.
In Jacksonville, another detective interviewed appellant and appellant showed him the crime scene. Appellant repeated his story and walked detectives through the crime. He explained that he struck the victim to avoid resistance because he knew that homeless people carry knives and guns, and he did not want to get injured.
Appellant testified that he did not decide to rob the victim until he was actually standing over him with the pipe. He acted without thinking because of his mental state and he battered Fullwood instinctively when confronted by her. When Hall approached, appellant realized his actions and walked away.
During the penalty phase, appellant presented familial, expert, and his own testimony. Appellant's mother, sister, and brother testified about his family backgroundincluding abuse by his father when he was a childand drug and alcohol abuse as an adult. Furthermore, Dr. Harry Krop, a clinical psychologist, testified regarding his findings as to appellant, which included a diagnosis of alcohol and drug abuse, frontal lobe defects, and schizoid personality traits. Appellant testified that he was greatly affected by the fact that his parents never told him that they loved him, although he subsequently learned that his mother loved him as evidenced by her hard work in raising the children. He also expressed religious beliefs and stated that he would accept responsibility for his actions, he apologized to the decedent's family and Fullwood, and he asked for forgiveness.
Miller v. State, 770 So.2d 1144, 1146-47 (Fla.2000) (footnote omitted). Miller was convicted by a jury of first-degree murder and the jury returned a death recommendation by a vote of seven to five. The trial court sentenced David Miller to death for the murder and imposed a sentence of twenty-five years incarceration for aggravated battery as a habitual violent felony offender.
On appeal to this Court, Miller raised three issues, claiming the circuit court erred by (1) denying Miller's motion for judgment of acquittal to the premeditation theory for the first-degree murder count; (2) failing to find mitigating circumstances established by the evidence; (3) sentencing Miller to death. This Court affirmed Miller's convictions and sentences on direct appeal. Miller v. State, 770 So.2d 1144, 1147-50 (Fla.2000).
*1248 Miller filed a shell motion for postconviction relief on September 27, 2001, in order to toll the time periods for federal habeas corpus relief. On January 23, 2002, the trial court granted the State's motion for summary denial and granted an additional thirty days for the filing of an amended motion. On March 11, 2002, Miller filed his amended motion to vacate judgment of conviction, raising sixteen claims for relief.[1] On September 17, 2002, a preliminary hearing was held pursuant to Huff v. State, 622 So.2d 982 (Fla.1993). At the Huff hearing the circuit court determined that an evidentiary hearing would be held on claims (2), (3), (4), (8), and (13).[2] Following the evidentiary hearing, the circuit court denied all claims.[3]

RULE 3.851 APPEAL
Miller filed a notice of appeal for review in this Court asserting that the circuit court erred in denying seven of his claims. Miller argues in this appeal that the postconviction court should have found: (1) trial counsel was ineffective for failing to present sufficient mitigation evidence and mental health testimony to the jury during the penalty phase; (2) trial counsel was ineffective in failing to offer evidence to minimize the aggravating factor of a prior violent felony arising from defendant's prior second-degree murder conviction; (3) trial counsel was ineffective for failing to object to the State's closing argument; (4) Florida's death penalty statute is unconstitutional due to numerous jury instructions which fail to ensure that death is not imposed arbitrarily; (5) the death penalty is inappropriate in this case; (6) Florida's sentencing procedure is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (7) Florida's sentencing statute is unconstitutional on its face and as applied because it *1249 violates the Eighth and Fourteenth Amendments of the United States Constitution and article I, sections 9, 16, and 17 of the Florida Constitution.

1. Ineffective Assistance of Counsel Claims
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that two requirements must be satisfied in order for ineffective assistance of counsel claims to be successful: (1) the claimant must identify particular acts or omissions of the lawyer that are outside of the broad range of reasonably competent performance under prevailing professional standards and (2) the deficiency shown must be demonstrated to have so affected the proceeding that confidence in the outcome is undermined. See, e.g., Happ v. State, 922 So.2d 182 (Fla. 2005); Suggs v. State, 923 So.2d 419 (Fla. 2005); Holland v. State, 916 So.2d 750, 756 (Fla.2005).

A. Mitigating Evidence
Miller asserts that trial counsel was ineffective for failing to perform an adequate investigation into mitigating evidence and failing to present adequate mitigating evidence during the penalty phase.
First, Miller argues that trial counsel Refik Eler performed a deficient investigation because he failed to obtain an adequate mental health evaluation from the health consultant, Dr. Harry Krop. Dr. Krop testified at the evidentiary hearing that his initial communication had been with original counsel, Alan Chipperfield. Eler testified that his task in investigating the case was made easier by the extensive groundwork laid by Assistant Public Defender Chipperfield, who initially had the case, and had prepared it "almost ready to try." Dr. Krop's time records showed that he had talked with an attorney just before trial and Dr. Krop testified that, given the time frame, this attorney must have been Eler. Dr. Krop also testified that he talked to an attorney after he had interviewed Miller's family and administered neuropsychological testing on Miller, but Dr. Krop did not remember which attorney this had been. Eler had a specific recollection of having discussed the case with Dr. Krop and recalled that Dr. Krop had emphasized Miller's frontal lobe deficit and alcohol abuse.
The record also reflects, in part from the response to the State's request for production dated February 10, 2003, that Eler had access to extensive materials, including a mental evaluation of December 1997, a letter from Chipperfield to Dr. Krop, Miller's school records, Miller's Navy service record, Forsyth-Stokes Mental Health Center records, Dorothea Dix Hospital medical records, and Miller's North Carolina Department of Corrections records. Further, Dr. Krop relied on these materials provided to him by defense counsel in making his diagnosis.
Miller also claims that trial counsel was deficient by failing to interview Ms. Debra Lee, a social worker from the Veterans Administration (VA) hospital where Miller received treatment. However, it is clear from the record that trial counsel was aware of her potential testimony. Eler did not contact Lee directly because Chipperfield had already done so. Moreover, Eler was aware of her role with regard to the 1996 VA in-patient treatment that Miller had received. As Miller's response to the State's request for production reveals, the VA records were actually in Eler's file. Trial counsel testified at the evidentiary hearing that he decided not to present Lee as a witness because she was a social worker and not a mental health expert. Furthermore, she did not counsel, treat, or test Miller.
*1250 We conclude that the trial court did not err in rejecting Miller's argument that trial counsel Eler did not perform a proper investigation since the record supports a conclusion that Eler researched all reasonable areas of mitigation, including the work and research of prior defense counsel. The record reflects that this is clearly not a case in which trial counsel "never attempted to meaningfully investigate mitigation," Rose v. State, 675 So.2d 567, 572 (Fla.1996), or where counsel's investigation was "woefully inadequate." Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995). Here, the record demonstrates that counsel was aware of Miller's childhood, his substance abuse problems, and his mental health issues. Under these circumstances we find no error in the trial court's essential conclusion that trial counsel performed a reasonably diligent investigation. See Rompilla v. Beard, 545 U.S. 374, ___, 125 S.Ct. 2456, 2463, 162 L.Ed.2d 360 (2005) ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.") (citing Wiggins v. Smith, 539 U.S. 510, 525, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Strickland, 466 U.S. at 699, 104 S.Ct. 2052; Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)).
Next, Miller claims that trial counsel did not elicit adequate mitigating evidence from Dr. Krop at the penalty phase. The trial court denied this claim and stated:
This Court finds it was within the wide range of professional judgment for Mr. Eler to make a tactical decision to have certain aspects of Defendant's background to come out at trial through family members and not through Dr. Krop. This Court finds Mr. Eler made a tactical decision to not admit Defendant's VA hospital records at trial because they contained in his opinion information detrimental to the defense.
We find no error in the trial court's rulings.
To assess whether trial counsel was deficient, we first examine Dr. Krop's testimony during the penalty phase of Miller's trial. Dr. Krop testified that he diagnosed Miller with some type of depression, and the primary diagnosis was alcohol abuse, since depression and violent behavior usually came from his drinking. Next, he testified that Miller has a personality disorder (but not a major mental illness like psychosis or schizophrenia), which is a mental disorder that influences the way a person thinks and behaves and creates problems for the individual and society. Dr. Krop testified that Miller likely has had a mixed personality disorder since 1983, involving features of being avoidant, schizoid, and paranoid. He said that this means Miller has a combination of being aloof, not fitting in with society, and thinking people are out to get him. Dr. Krop stated that Miller does not have an antisocial personality disorder and has not been diagnosed that way in the past. Also, he testified that based on neuropsychological testing, Miller has impairment of frontal lobe functions, but performed well on intelligence tests. He explained that the frontal lobe controls inhibition, namely how much control a person has when he gets started on something. Further, Dr. Krop testified that Miller has a long history of alcohol abuse, for which treatment was already recommended. According to Dr. Krop's testimony, the danger of adding alcohol to a person who already has Miller's problems and personality traits is that the alcohol makes it more difficult to control behavior, and an individual can become pretty seriously disturbed when these facts are combined.
*1251 Moreover, Dr. Krop testified that although Miller received treatment when incarcerated or hospitalized, at other times when he was in the community he was essentially homeless and schizoid, and he did not follow up with treatment for his personality disorder or his alcohol abuse. Dr. Krop also stated that Miller's behavior was influenced by alcohol, but was unsure as to what degree. Dr. Krop said that Miller himself did not feel that alcohol was an excuse for the murder. Dr. Krop does not think that at the time of the offense Miller was so severely intoxicated that he could not form intent. Also, Dr. Krop noted Miller's assertion that the whole motive in the robbery attempt was to get money to support his alcohol and drug habit. Dr. Krop stated that Miller expressed full responsibility for the murder from the time he voluntarily turned himself in. Dr. Krop testified that when he met with Miller, it appeared that he felt guilty and remorseful and indicated that he deserved to be punished, that he was responsible for what happened, and that nobody deserved to be victimized like his victims.
Dr. Krop opined that Miller was mentally competent when he committed the murder and was mentally competent to participate in the proceedings. Finally, Dr. Krop testified that at the time of the murder, he thought that Miller knew the difference between right and wrong and had the ability to conform his behavior to the requirements of the law and to make the conscious decision to kill. Dr. Krop testified that Miller functions better in a prison environment than in the outside world because of the degree of structure prison affords and would adapt well to life in prison.
Miller contends that trial counsel should have presented even more mitigating evidence during the penalty phase, especially from Dr. Krop. Miller argues that the underlying facts supporting Dr. Krop's conclusions, including Miller's medical records, information about his prior hospitalizations and involuntary commitments, and facts explaining the effects of long term polysubstance abuse were not presented during the penalty phase. Moreover, Miller argues that none of his psychological history was presented, especially his hospitalization four months before the homicide and the psychological effects of an abused childhood. His abused childhood included Miller witnessing his cousins raping his sisters and his father beating him for reporting what he had witnessed, as well as his emotional deprivation from his father's alcoholism and his mother's withdrawal.
Trial counsel testified that he chose not to present certain mental health records because he believed they contained detrimental information, including information that Miller tried to kill his brother with a knife during a violent and destructive twenty-four hour period. Moreover, the records contain a report that tends to refute Miller's claim that he was remorseful after his first murder, and they indicate that Miller's recounting of his childhood and possible sexual abuse was inconsistent.
Trial counsel was concerned that the introduction of these records would have opened the door to damaging cross-examination and possible rebuttal witnesses. Finally, trial counsel was confident that by presenting family members, he was able to present mitigating evidence regarding Miller's dysfunctional family, including physical abuse, and also to present testimony regarding the deaths of close family members.
We conclude that the trial court did not err in finding counsel's strategy as to how much information to secure from Dr. Krop and from family members to be reasonable. Furthermore, we also agree with *1252 the trial court's finding that counsel's conduct was reasonable in concluding that presenting the mental records could have been a two-edged sword. See Henry v. State, 862 So.2d 679, 685-86 (Fla.2003) (finding reasonable trial counsel's decision not to put on mental mitigation that was a "two-edged sword"). Moreover, these strategic decisions are supported by counsel's other choices, including Dr. Krop's testimony, whereby trial counsel presented significant mitigating evidence regarding Miller's long-term mental health and emotional illness, drug and alcohol dependencies, impairment of frontal lobe functions, and Miller's remorse. Trial counsel also thought mitigating evidence would be best presented through the emotional and sympathetic testimony of his own family members, including Miller's mother, sister, and brother, which he felt would "humanize" Miller. See Bryan v. Dugger, 641 So.2d 61, 64 (Fla.1994) (finding counsel not ineffective for choosing a mitigation strategy of humanization and not calling a mental health expert). The trial court concluded that trial counsel made strategic decisions regarding which witnesses to call and what evidence to present to the jury. We conclude that the trial court did not err in concluding that trial counsel's strategy in the presentation of mitigating evidence was not deficient.

B. Minimizing the Aggravating Factor of Prior Violent Felony
Miller next argues that trial counsel was ineffective for failing to mitigate the prior violent felony aggravator because trial counsel did not articulate the underlying circumstances of the prior homicide conviction during the penalty phase. The trial court denied this claim by stating that "this Court finds that Mr. Eler made a tactical decision to minimize that amount and depth of information concerning Defendant's North Carolina murder conviction presented to the jury. Such a decision does not amount to ineffective assistance."
In order to establish the prior violent felony aggravator, the State introduced a certified record of Miller's prior conviction of second-degree murder in North Carolina. However, no evidence as to the underlying facts of this homicide were presented. Trial counsel was asked about his strategy not to discuss the prior second-degree murder at the evidentiary hearing. He testified:
I don't think we ignored it. We were aware of it. We were trying to minimize it and one of the ways that I consider reasonable in minimizing something is to gloss over and also not allow them to present more evidence on it and I thought that's what I was doing.
During the closing arguments of the penalty phase, trial counsel discussed the prior second-degree murder conviction by stating:
I suggest to you that the prior second degree murder conviction they have proven and it should be given some weight, but remember we don't know the circumstances. There wasn't any evidence presented by the State of the circumstances of that case.
It wasn't a first degree conviction. It was a second degree conviction, and the laws are different in North Carolina. Florida doesn't have parole. North Carolina has parole apparently.
So I disagree with Mr. Bateh. I think that while the evidence may have shown some of these, that the weight you give these, number one, prior violent felony should be given little weight compared to the mitigation in this case that was advanced.
Miller now argues that trial counsel should have presented the facts of the *1253 prior murder and the mental health issues that Miller was experiencing at the time, as shown by the mental health records and the North Carolina judge's sentencing order finding mental problems reducing his culpability for the 1986 murder. The trial court concluded that Miller was engaging in the kind of after-the-fact second-guessing of trial counsel's strategy that Strickland warns against. 466 U.S. at 689, 104 S.Ct. 2052 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Trial counsel testified at the evidentiary hearing that he did not want the jury to focus on the prior murder conviction. He stated that he believed it was better to let the State put it in and then move on to mitigation. Although we acknowledge that reasonable counsel could differ on such a strategy, we find no error in the trial court concluding that it is not outside of the realm of providing competent counsel. Moreover, we note that trial counsel engaged in an overall strategy that actually resulted in five votes by the jury against the death penalty in a case that involved a brutal beating death by a defendant who admittedly killed before. Therefore, we conclude that counsel's decision not to go into the details of the prior second-degree murder conviction in the face of the State's similar choice does not constitute deficient performance as a matter of law.
Finally, we conclude that the United States Supreme Court's decision in Rompilla does not require a different conclusion because the facts of this case are clearly distinguishable from those in Rompilla. As previously discussed, trial counsel reviewed all of the materials that were in his possession in preparation for Miller's penalty phase. Moreover, unlike Rompilla, there is no indication in this case that there was material that trial counsel was aware the State was going to use in aggravation that was not obtained and reviewed by trial counsel prior to the penalty phase. Here, trial counsel was fully aware of and had all relevant information regarding Miller's 1986 second-degree murder conviction. Because this case, unlike Rompilla, involves an informed attorney making an informed and strategic decision, Rompilla is inapplicable here.

C. Failing to Object to the State's Closing Arguments
Miller next claims trial counsel was ineffective for failing to object to multiple statements made by the prosecutor during the State's closing arguments. The trial court denied these claims, finding: "This Court finds it was within the wide range of professional judgment for Mr. Eler to make a tactical decision not to object to the State's closing arguments during both the guilty and penalty phases of Defendant's trial." This finding was essentially predicated upon defense counsel's testimony that his usual professional judgment at trial is to avoid objecting to the State's arguments except when absolutely necessary, and, instead, to respond in his own arguments to the State's excesses. We find no error. See Turner v. Dugger, 614 So.2d 1075, 1079 (Fla.1992) (rejecting claim that trial counsel was ineffective for failing to object where improper prosecutorial comments did not have the effect of depriving the defendant of a fair trial).
First, Miller claims that trial counsel was ineffective for failing to object during closing arguments when the prosecutor suggested that there would have been a second death but for the intervention of Jimmy Hall in the instant case. *1254 Miller relies on Ruiz v. State, 743 So.2d 1, 10 (Fla.1999), wherein this Court reversed the defendant's convictions and remanded for a new trial based on multiple instances of prosecutorial misconduct. For example, one instance of misconduct occurred in Ruiz when the prosecutor "invok[ed] the immense power, prestige, and resources of the State" by arguing, "What interest do we [prosecutors] as representatives of the citizens of this county have in convicting somebody other than the person." Id. at 9. This Court found that by making this argument, the prosecutor was improperly implying, "If the defendant wasn't guilty, he wouldn't be here." Id. at 5. We conclude, however, that the prosecutor's statements in this case are not as egregious as what occurred in Ruiz, which included numerous instances of prosecutorial misconduct.
In Ruiz, this Court went on to caution:
The role of the attorney in closing argument is "to assist the jury in analyzing, evaluating and applying the evidence. It is not for the purpose of permitting counsel to `testify' as an `expert witness.' The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence."
Id. at 4 (quoting United States v. Garza, 608 F.2d 659, 662 (5th Cir.1979)). We have further stated that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Robinson v. State, 610 So.2d 1288, 1290 (Fla.1992) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)).
We find the claim here clearly distinguishable from Ruiz. Moreover, trial counsel did object to the State's attempt to imply that Miller would have committed a second homicide.[4] Trial counsel also testified at the evidentiary hearing that the facts before the jury somewhat supported the State's statements and he preferred not to make more of the issue once his objections were overruled. Because of this evidence before the trial judge, we find no error by the trial judge in rejecting this claim.
Second, Miller contends that the prosecutor improperly vouched for the credibility of Jimmy Hall. Miller contends that trial counsel was ineffective for not objecting when the prosecutor stated:
You heard from Jimmy Hall. Now I'm not here to tell you that Jimmy Hall is the kind of guy that you want to move in next door to you or that you want to date your daughter. He's a convicted felon, and he admitted that to you. But he's come here, and he's told you the truth. He told you he doesn't know anyone involved in this. He doesn't know either the victim or the defendant, but he had the courage to respond to Linda Fullwood's cries for help.
Miller claims this argument was improper because the prosecutor was expressing his personal opinion of the witness's credibility. However, an attorney is allowed to argue reasonable inferences from the evidence *1255 and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence. Craig v. State, 510 So.2d 857, 865 (Fla.1987) ("When counsel refers to a witness or a defendant as being a `liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration."). We find no error by the trial court in rejecting this claim and concluding that the prosecutor was arguing, based on the facts surrounding the witness's testimony, that the witness was worthy of belief. We also find no error in the trial court's further conclusion that trial counsel was not ineffective for failing to object to this argument.
Third, Miller claims that his counsel rendered deficient performance by not objecting to an argument made by the prosecutor during penalty-phase closing argument. Specifically, the prosecutor expressed the following arguments:
The defendant didn't care that Albert Floyd had a wife. He didn't care that Albert Floyd had children. He didn't care that he had family and friends that loved and cared for him. He didn't care. Now he wants you to care for him. He wants you to recommend a life sentence for him. Our purpose here today is to decide what punishment for you to recommend to Judge Taylor that the defendant should get for murdering Albert Floyd.
. . . .
The defendant wants you to only hear that there are people who love and care for the defendant. He wants you to hear and focus on his life, his family, his problems, doesn't really want you to hear about Albert Floyd, that he had a wife, children, grandchildren. Wants you to forget that he was a hard working man who worked to support his family. Doesn't want you to think about the people who loved and cared for Albert Floyd. You, the jury have the right to know that Albert Floyd was again more than that lifeless morgue picture, that he was a living, breathing human being with real blood flowing through his brainhis veins. He was loved and he gave love. Albert Floyd was a giver, a contributor to society. His life made a difference and his death is a loss. The evidence shows, on the other hand, that this defendant is a taker, not a giver. Actions speak louder than words. He took two lives in 11 years and one month. He tried to take Albert Floyd's property to get high again, and he took his life simply because he wanted to.
Miller argues that this case is similar to cases where the prosecution asks the jury to show the defendant the same mercy and sympathy that he showed the victim. This Court clearly disapproves of this type of argument. See, e.g., Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999) ("[A]sking a jury to show as much mercy to a defendant as he showed the victim is a clear example of improper prosecutorial misconduct, which constitutes error and will not be tolerated."); Richardson v. State, 604 So.2d 1107, 1109 (Fla.1992) (concluding that the prosecutor was not allowed to ask the jury to show the defendant as much pity as he showed the victim). We agree with Miller that this argument comes dangerously close to using victim impact evidence as a nonstatutory aggravator.
However, in the instant case, the prosecutor did not ask the jury to give the same mercy and sympathy that the defendant *1256 showed the victim. Moreover, the prosecutor did not make a "golden rule" argument by asking the jurors to place themselves in the victim's position of terror or imagine how they would feel if the victim were a relative. See Pagan v. State, 830 So.2d 792, 812-13 (Fla.2002). Instead, the prosecutor argued, "[Miller] didn't care that [the victim] had family and friends that loved and cared for him." Furthermore, although trial counsel did not object to this argument, consistent with his professional judgment he decided to challenge it during his penalty-phase closing argument.[5] While we acknowledge again that reasonable counsel could differ, and we find the prosecutor's arguments objectionable, we find no error in the trial court's determination that trial counsel was not ineffective for strategically deciding not to object to this argument made by the prosecutor. See Thomas v. State, 838 So.2d 535, 542 n. 8 (Fla.2003) ("Although our review of the record shows that several of the prosecutor's comments made during closing argument were improper, we conclude that the circuit court did not err in rejecting Thomas's ineffectiveness claim in this regard.").

2. Jury Instructions
Miller claims that Florida's capital sentencing procedures are unconstitutional because the jury instructions improperly shift the burden of proof, minimize and denigrate the role of the jury, and fail adequately to define mitigation. Miller also alleges that trial counsel was ineffective for failing to object to the jury instructions.
Claims challenging the constitutionality of Florida's capital sentencing procedures should be raised at trial and on direct appeal. See Rodriguez v. State, 919 So.2d 1252, 1280 (Fla.2005) ("Claims regarding the adequacy or constitutionality of jury instructions should be raised on direct appeal"); Thompson v. State, 759 So.2d 650, 665 (Fla.2000) (stating that substantive challenges to jury instructions are procedurally barred in postconviction challenges because the claims can and therefore should be raised on direct appeal). Furthermore, this Court "will not consider such procedurally barred claims under the guise of ineffective assistance of counsel." Rodriguez, 919 So.2d at 1262; see also Freeman v. State, 761 So.2d 1055, 1067 (Fla.2000) (holding that claims that were raised on direct appeal cannot be relitigated under the guise of ineffective assistance of counsel).
Not only are Miller's claims procedurally barred, they are without merit. *1257 First, Miller challenges the instruction that purportedly diluted the jury's responsibility by labeling their penalty phase verdict as advisory and not binding. This Court has repeatedly rejected this claim. Perez v. State, 919 So.2d 347, 368 (Fla. 2005); Card v. State, 803 So.2d 613, 628 (Fla.2001) (holding that claim that instructions "that refer to the jury as advisory and that refer to the jury's verdict as a recommendation violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)" was without merit); Brown v. State, 721 So.2d 274, 283 (Fla. 1998) (holding that the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, do not denigrate the role of the jury, and do not violate Caldwell). Next, this Court has repeatedly rejected claims that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence. Rodriguez, 919 So.2d 1252, 1280; San Martin v. State, 705 So.2d 1337, 1350, 1350 n. 5 (Fla.1997) (concluding that weighing provisions in Florida's death penalty statute requiring the jury to determine "[w]hether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist" and the standard jury instruction thereon did not unconstitutionally shift the burden to the defendant to prove why he should not be given a death sentence). Also, this Court has rejected the claim that the standard mitigation instructions fail to define mitigation adequately. Belcher v. State, 851 So.2d 678, 685 (Fla.2003) ("[T]he trial court did not abuse its discretion by giving a `catch-all' jury instruction about mitigation instead of giving [a] list of nonstatutory mitigators."). Thus, all of Miller's claims challenging the substance of the jury instructions are procedurally barred and without merit.

3. Innocence of the Death Penalty
Miller next claims that he is entitled to relief because he is innocent of the death penalty. In his 3.851 motion, Miller asserted that he was innocent of the death penalty because the sentencing court erred in instructing the jury on and finding the prior violent felony aggravator and the pecuniary-gain aggravator. The trial court summarily denied this claim, noting that Miller's 1986 conviction for second-degree murder had not been set aside and remained a valid conviction, that this Court had upheld the use of contemporaneously committed felonies to support a finding of the prior violent felony aggravator, and that the pecuniary gain aggravator had been properly found.
In order to succeed on an innocence of the death penalty claim, a petitioner must demonstrate that each aggravating circumstance found by the court was invalid. Vining v. State, 827 So.2d 201, 216 (Fla.2002); see also Elledge v. State, 911 So.2d 57, 78 (Fla.2005) (finding innocent of the death penalty claim without merit); Allen v. State, 854 So.2d 1255, 1257 n. 3, 1258 n. 5 (Fla.2003) (rejecting innocence of death penalty claim because petitioner did not allege that all of the aggravating circumstances supporting his death sentence were invalid). Miller has not made such a showing. Also, Miller's contention that he is innocent of the death penalty was decided adversely to Miller on direct appeal. On direct appeal, we concluded that "the death sentence in this case is proportionate to other cases where the sentence has been imposed." Miller, 770 So.2d at 1150.
Miller also claims that there is newly discovered evidence from the evidentiary hearing that would result in Miller being innocent of the death penalty. He argues that substantial mitigation presented *1258 at the evidentiary hearing, including evidence of Miller's mental health and emotional problems at the time of the 1986 murder, his abusive and dysfunctional family, his alcohol and drug abuse, and the results of the positron emission tomography (PET) scan, compel reconsideration of the proportionality of his sentence. There are two requirements that must be met in order to set aside a sentence because of newly discovered evidence. First, the asserted facts "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence." Scott v. Dugger, 604 So.2d 465, 468 (Fla. 1992) (quoting Hallman v. State, 371 So.2d 482, 485 (Fla.1979), abrogated on other grounds by Jones v. State, 591 So.2d 911, 915 (Fla.1991)). Second, "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Scott, 604 So.2d at 468 (quoting Jones v. State, 591 So.2d 911, 915 (Fla.1991)). This "standard is also applicable where the issue is whether a life or death sentence should have been imposed." Id. (citing Jones, 591 So.2d at 915).
First, Miller asserts that because he suffered from mental health and emotional problems at the time of the 1986 murder this creates a disproportionate sentence. However, Miller's trial counsel was aware of this information at the time of trial but chose not to focus on the 1986 conviction when presenting mitigation during the penalty phase. Miller fails step one of the newly discovered evidence test.
Second, Miller contends that that Dr. Krop could have testified that his dysfunctional family and the physical and psychological abuse inflicted on Miller would make his sentence disproportionate. However, this information was also known by trial counsel at the time of trial. Trial counsel testified at the evidentiary hearing that he knew of this information. Therefore, it is not newly discovered evidence. Moreover, the trial court considered the abuse by his father when it sentenced Miller, but gave no weight to it because Miller's father died when he was 13. Miller, 770 So.2d at 1146 n. 1. This Court found on direct appeal that the trial court did not abuse its discretion when giving this fact no weight. We stated:
Miller's mother and sister testified that his father administered corporal punishment to the children once every six-to-eight months. Appellant did not present evidence of injuries or hospitalization resultant from the punishments. Moreover, the punishments ceased when appellant was thirteen years old, when his father ceased living with the family. See Sochor v. State, 619 So.2d 285, 293 (Fla.1993). Compare Campbell, 571 So.2d at 419 (concluding that the trial court wrongly rejected defendant's proposed child abuse mitigator because record revealed "extreme abuse" such as defendant's requiring hospitalization after being hit with a telephone, that he was covered with bruises, and that he was subject to such mistreatment that he was declared dependent). On this record, we cannot say that the trial court abused its discretion in declining to find this mitigating circumstance.
Miller, 770 So.2d at 1149-50.
Next, Miller argues that his alcohol and drug history makes his sentence disproportionate and that this information should have been disclosed to the jury. However, once again, this information was known by trial counsel at the time of trial. Moreover, there was evidence presented during the penalty phase of Miller's drug and alcohol problems. However, the trial court did not give this factor any weight *1259 when sentencing Miller. Id. at 1146 n. 1. This Court concluded:
[T]he trial court abused its discretion in declining to find appellant's proposed mitigator that he suffers from long-term alcohol and substance abuse. Appellant testified that he abused alcohol and drugs throughout his adult life. His familial witnesses testified that he had a drinking problem and Dr. Krop testified that his substance abuse aggravated a frontal lobe disorder. Critically, the State concedes that appellant suffered such addictions. Because appellant's evidence of alcohol and substance abuse is uncontested, the trial court erred in declining to find this mitigating factor. See Mahn, 714 So.2d at 400-01. Nevertheless, we find this error to be harmless given the weighty aggravating factors present. See Pietri v. State, 644 So.2d 1347, 1354-55 (Fla.1994) (applying harmless error analysis to trial court's erroneous inclusion of aggravating factor). This conclusion is supported by testimony that appellant's substance abuse started when he was an adult, that his family tried to help him end the abuse, but that he rejected their help.
Miller, 770 So.2d at 1150.
Finally, Miller argues that the PET scan offers new information. However, Dr. Krop testified at trial that Miller suffered from a frontal-lobe deficiency. Moreover, Dr. Krop testified at the evidentiary hearing that the information revealed from the PET scan supported his initial conclusion of a frontal lobe deficiency. Therefore, although the results from the PET scan were not known at the time of the trial, this additional evidence is not the type of evidence that is "of such nature that it would probably produce an acquittal on retrial." Scott, 604 So.2d at 468 (alteration in original) (quoting Jones v. State, 591 So.2d 911, 915 (Fla.1991)). Because it appears that the results would have only corroborated Dr. Krop's testimony, we deny Miller's claim.
We conclude that Miller's innocence of death penalty claims lack merit because he did not demonstrate that each aggravating circumstance supporting his death sentence was invalid, this Court has already conducted a proportionality review on direct appeal, and Miller has presented no newly discovered evidence that would likely produce an acquittal on retrial.

4. Florida's Sentencing Procedure in Light of Ring v. Arizona

Recently, this Court held that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), does not apply retroactively. Johnson v. State, 904 So.2d 400, 407 (Fla.2005). Because Ring was decided after Miller's convictions became final, Ring is inapplicable to his case. Moreover, one of the aggravating circumstances found by the trial court in this case was a prior conviction of a violent felony (second-degree murder), a factor which, under Ring, need not be found by the jury. See Perez v. State, 919 So.2d 347, 381 (Fla.2005); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003).

5. Unconstitutionality of the Death Penalty
Miller contends that the committed during a robbery aggravator is unconstitutional because it is an "automatic" aggravator. The trial court found this claim to be procedurally barred because of Miller's failure to raise it on direct appeal and also meritless. Miller makes additional contentions: Florida's capital sentencing statute fails to provide a necessary standard for determining that aggravating circumstances "outweigh" mitigating factors, does not define "sufficient aggravating circumstances," and does not sufficiently define each of the aggravating circumstances; *1260 Florida's capital sentencing procedure does not have the independent reweighing of aggravating and mitigating circumstances required by Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); the aggravating circumstances have been applied in a vague and inconsistent manner and juries have received unconstitutionally vague instructions; and Florida law violates the Eighth Amendment in creating a presumption of death if a single aggravating circumstance is found, which occurs in every case of felony murder and nearly every premeditated murder. The trial court found all of these claims to be procedurally barred because of Miller's failure to raise them at trial and on direct appeal.
This Court has consistently held that a claim that could and should have been raised on direct appeal is procedurally barred. See Davis v. State, 915 So.2d 95, 129 (Fla.2005), petition for cert. filed, No. 05-8805 (U.S. Jan. 18, 2006); Duckett v. State, 918 So.2d 224, 234 (Fla. Oct. 6, 2005); Robinson v. State, 913 So.2d 514, 524 n. 9 (Fla.2005). Because Miller could have raised all of these claims on direct appeal but failed to do so, these claims are procedurally barred.
Miller's claims are also without merit. Miller argues that Florida's capital felony sentencing statute is unconstitutional because every person who is convicted of first-degree felony murder automatically qualifies for the aggravating circumstance of commission during the course of an enumerated felony. This Court has-rejected the argument that Florida's capital sentencing scheme is unconstitutional because it provides for an automatic aggravating circumstance and neither "narrow[s] the class of persons eligible for the death penalty" nor "reasonably justif[ies] the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Parker v. State, 873 So.2d 270, 286 n. 12 (Fla.2004) (alterations in original) (quoting Zant v. Stephens, 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)); see Blanco v. State, 706 So.2d 7, 11 (Fla.1997). As this Court pointed out in Blanco, this claim is meritless:
Eligibility for this aggravating circumstance is not automatic: The list of enumerated felonies in the provision defining felony murder is larger than the list of enumerated felonies in the provision defining the aggravating circumstance of commission during the course of an enumerated felony.
Id. at 11 (footnote omitted); see also Francis v. State, 808 So.2d 110, 136 (Fla.2001).
Miller's other claims have previously been held to be meritless. See Proffitt v. Florida, 428 U.S. 242, 255-56, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (upholding constitutionality of Florida's death penalty statute against multiple challenges, including challenge based on vagueness and overbreadth of aggravating and mitigating circumstances and the lack of guidance for the jury in weighing such factors); Lugo v. State, 845 So.2d 74, 119 (Fla.2003) (reiterating that this Court has "rejected the claim that the death penalty system is unconstitutional as being arbitrary and capricious because it fails to limit the class of persons eligible for the death penalty"); Freeman v. State, 761 So.2d 1055, 1067 (Fla.2000) (rejecting as meritless the argument that the same felony underlying a felony murder conviction "cannot be used as an aggravating factor"); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992) (rejecting as meritless claim regarding the lack of an independent reweighing of aggravating and mitigating factors).
Finally, the trial court was correct when it stated that the "[d]efendant may not attempt to circumvent this procedural bar by inserting conclusory allegations of ineffective *1261 assistance of counsel." See Thompson v. State, 796 So.2d 511, 515 n. 5 (Fla. 2001) (forbidding a conclusory allegation of ineffectiveness of counsel when the substantive claims were procedurally barred). Therefore, we deny all of Miller's claims relating to the unconstitutionality of the death penalty.

PETITION FOR WRIT OF HABEAS CORPUS
Having affirmed the trial court's denial of Miller's 3.851 motion, we now consider Miller's petition for writ of habeas corpus. Miller contends that appellate counsel was ineffective for failing to raise instances of prosecutorial misconduct on direct appeal even though no objection was raised at trial. This Court has consistently stated that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object. See Brown v. State, 846 So.2d 1114, 1127 (Fla.2003); Randolph v. State, 853 So.2d 1051, 1068 (Fla.2003); Spencer v. State, 842 So.2d 52, 74 (Fla.2003); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding appellate counsel was not ineffective in failing to raise allegedly improper comments by the prosecutor which were not preserved for appeal by objection). Specifically, this Court has established that "failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review." Brooks v. State, 762 So.2d 879, 898 (Fla.2000). The sole exception to the general rule is where appellate counsel fails to raise a claim which, although not preserved at trial, rises to the level of fundamental error. Id. at 898-99; see also Rodriguez v. State, 919 So.2d 1252, 1281-82 (Fla.2005); Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999). In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960); see also Rodriguez, 919 So.2d at 1282; Kilgore v. State, 688 So.2d 895, 898 (Fla.1996); State v. Delva, 575 So.2d 643, 644-45 (Fla.1991). Furthermore, in order for improper comments made in the closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence. Thomas, 748 So.2d at 985.
As he did in his appeal of the trial court's denial of postconviction relief, Miller believes that the prosecutor improperly vouched for the credibility of a state witness and invoked victim sympathy. As a result, Miller contends that appellate counsel was ineffective for not raising these issues on direct appeal. However, because there were no objections made at trial to the prosecutor's arguments, these issues were not preserved for appeal. See Spencer, 842 So.2d at 74. As we previously discussed in our denial of Miller's appeal for postconviction relief, we do not condone the comments made by the prosecutor. However, we conclude that the prosecutorial comments cited do not rise to the level of fundamental error. Therefore, we hold that appellate counsel was not ineffective for failing to raise these claims on direct appeal.

CONCLUSION
For the reasons discussed above, we affirm the circuit court's denial of postconviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
*1262 PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Miller's motion alleged: (1) the unconstitutionality of the public records exemption and accompanying prejudice arising from the deadline for the filing of the motion prior to receipt of all public records; (2) ineffective assistance of trial counsel in failing to investigate and utilize available evidence, to challenge the State's case, to properly object, to request jury instructions, to present mitigation where Miller's mental state was at issue, and to properly present a voluntary intoxication defense; (3) ineffective assistance of trial counsel in failing to object to improper and inflammatory closing arguments of the prosecutor in both guilt and penalty phase; (4) ineffective assistance of counsel in failing to obtain an adequate mental health evaluation and failing to provide necessary materials to a mental health consultant in order to ensure that a proper evaluation was conducted; (5) the unconstitutionality of the death penalty due to the use of unconstitutional aggravating factors and accompanying jury instructions including prior violent felony and pecuniary gain; (6) the unconstitutionality of the death sentence due to repeated instructions which denigrate the significance of the jury sentencing recommendation; (7) unconstitutional shifting of the burden of proof to the defendant as to the appropriateness of the death penalty and as to the demonstration of mitigating factors and aggravating circumstances; (8) there were unconstitutional limitations on counsel conducting juror interviews; (9) execution by lethal injection or electrocution is cruel and unusual punishment; (10) execution of the incompetent is cruel and unusual; (11) the unconstitutionality of the death penalty due to arbitrary and capricious imposition; (12) denial of adequate direct appellate review due to a deficient record on appeal; (13) the jury relied upon misinformation in sentencing Miller; (14) ineffective assistance of counsel in failing to adequately investigate and present mitigating factors present in the prior convictions of Miller; (15) unconstitutional use of the contemporaneous felony convictions to satisfy the prior violent felony aggravating circumstance; (16) the unconstitutionality of the nonunanimous sentencing recommendation for death.
[2] See supra note 1.
[3] An order denying Miller's amended motion for postconviction relief was issued on April 22, 2004.
[4] During guilt-phase closing arguments, the prosecutor made these statements, to which the defense objected:

Prosecutor: He starts trying to kill Linda Fullwood, and he would have continued to try to kill Linda Fullwood except for Jimmy Hall arriving at the scene.... I would submit to you that, if Jimmy Hall had not come up when he did come up, responding to the cries of Linda Fullwood, from the evidence that you've heard, what do you suppose the defendant would have done?
Trial Counsel Eler: Your Honor, I think he can comment on the evidence, but anything else would be improper.
The Court: Overruled. I think it's a fair comment.
[5] During his penalty-phase closing argument, Eler stated:

I'd ask you to consider the many sides of the folks you saw here in this three of four week process from the guilt phase. You saw two sides of Mr. Floyd. You saw a side where he wasn't a family man. He was married and had wonderful children and had grandchildren. And saw a side of him that was in the street with some drug and alcohol problems.
You saw two sides to Miller. You saw a side that he indicated wasn't a nice side, that he did this particular crime. But there is also another side, a side to Miller that I suggest, I hope some of the evidence has shown, that when he is in prison in a structured, general population environment that he doesn't pose a threat. And he will not be released and he will spend the rest of his natural life in prison.
I would ask you to consider that. Go back in a few minutes after you listen to the jury instructions. The Judge isn't going to tell you that you should consider victim impact as an aggravating circumstance.
Mr. Floyd was valuable and I am not here to say he wasn't, but I am here and I hope you listen and apply the law. And if you apply the law that the Judge says, it's not just a number counting process, it's a weighing process.