672 So.2d 648 (1996)
Richard BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 95-0108.
District Court of Appeal of Florida, Fourth District.
May 1, 1996.
*649 Douglas Duncan of Roth, Duncan & Labarga, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William A. Spillias, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, Judge.
We reverse defendant's conviction for the crime of manslaughter with a firearm. It was error for the trial judge to deny defendant's motion for a judgment of acquittal.
The evidence underlying the conviction was entirely circumstantial. Defendant's motion argued that all of the evidence viewed in the light most favorable to the state failed to exclude every reasonable hypothesis of innocence. State v. Law, 559 So.2d 187 (Fla. 1989). The state failed to adduce any evidence tending to prove that defendant fired a gun and killed the victim.
Briefly summarized, the evidence showed that defendant and the victim, who lived apart, were the parents of a 1½-year old child. By all accounts, defendant loved his child and would not knowingly place him in harm's way. Defendant had the child with him at his mother's house on the day in question. That house, however, is located in an area where illegal narcotics transactions are known to occur, where gunfire is not an uncommon occurrence, and where a shooting had only recently taken place.
That day, the victim drove to the house where defendant and the baby were staying, and defendant went outside to speak to her in her car at the curb in front of the house. They spoke for a few moments, with no apparent emotion or anger, and defendant returned to the house. There he picked up the child and walked back out to the car with the child and appeared to continue the conversation. There is no evidence of any problems or difficulties between the defendant and the victim. There is no evidence that defendant was angry or upset on this day.
During most of this encounter, defendant and the victim were observed by one witness or another. After an interval of less than a minute when no witness had an eye on them, several shots were heard. Defendant was immediately seen lying on the ground in a supine position, with the baby next to him. He then attempted to rise, stumbled back to the ground three or four times, and finally walked into the house bleeding very badly. He then returned outside and walked down the street to where the victim's car had crashed into a wall down a hill at the end of the street. He was seen to pick up a knife and walk back to the house. The knife was not from defendant's mother's house and was unidentified.
*650 The victim was in the car, which was still running when the police arrived, with the gearshift in the drive position. She died with three bullet wounds in her head, two of which were described as fatal, and one of which was said to have been fired from close range.
There was blood on the passenger side of the seat, but little blood on the driver's side. One of the car doors was open. An officer found a gun back up the hill and some blood nearby. The defendant's prints were not found on the car, the gun, its magazine, or the lone bullet found left in the chamber. Two bullets found at the scene came from the gun.
Defendant was first attended at the scene by a trained nurse/paramedic. He testified that defendant had knife wounds in his neck and a gunshot wound to the face. Defendant was then taken to the hospital.
One doctor who treated him there testified that his gunshot wound would have resulted from a gun held behind him and aimed directly downward. He also said that he had never seen a self-inflicted injury like defendant's gunshot wound. No evidence connected the gun found at the scene to the gunshot wound in defendant's head.
Another treating doctor described his principal knife wound as 3½ inches long, but the additional one was superficial. He, too, stated that he had never before seen self-inflicted wounds of the kind suffered by defendant.
There is no link between defendant and the murder weapon. There is no witness who saw defendant commit the crime. There is no suspicious behavior on the part of defendant before or after the crime was committed. See Smolka v. State, 662 So.2d 1255 (Fla. 5th DCA 1995), rev. denied, 668 So.2d 603 (Fla.1996). The only evidence tying defendant to the crime was his presence at the scene and the possible negative inference from testimony of witnesses that they did not see anyone else in the vicinity.
A prima facie case of circumstantial evidence must lead to a "reasonable and moral certainty that the accused and no one else committed the offense charged." Davis v. State, 90 So.2d 629 (Fla.1956). Where the evidence creates only a strong suspicion of guilt or simply a probability of guilt, the evidence is insufficient to sustain a conviction. Cox v. State, 555 So.2d 352 (Fla.1989).
Circumstantial evidence is insufficient when it requires pyramiding of assumptions or inferences in order to arrive at the conclusion of guilt. Gustine v. State, 86 Fla. 24, 97 So. 207 (1923); and Chaudoin v. State, 362 So.2d 398 (Fla. 2d DCA 1978). Mere presence at the scene of a crime is insufficient by itself to convict. Davis v. State, 436 So.2d 196 (Fla. 4th DCA 1983), rev. denied, 444 So.2d 418 (Fla.1984); and Whitehead v. State, 273 So.2d 146 (Fla. 2d DCA 1973).
On the record placed before us, we are unable to agree with the trial court that the evidence constituted a sufficient prima facie case against the accused. Defendant is discharged.
WARNER and STEVENSON, JJ., concur.