973 So.2d 1196 (2008)
Reginald L. SWIFT, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-103.
District Court of Appeal of Florida, Second District.
January 16, 2008.
*1197 Guillermo E. Gomez, Jr., of Gomez & Touger, P.A., Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Reginald L. Swift challenges his conviction for aggravated assault on a law enforcement officer. The State's theory of the case was that Mr. Swift committed the offense by backing his automobile in the direction of a police officer who had run behind Mr. Swift's vehicle only seconds before Mr. Swift began backing out of a driveway at night. Because the State failed to prove that Mr. Swift had the requisite intent to threaten the officer, we reverse the judgment and sentence for aggravated assault.

The Facts
The State's evidence at trial tended to prove the following version of events.[1] At approximately 6 p.m. on May 21, 2005, Officer Kevin Sweat of the Haines City Police Department received a tip from a confidential informant that a suspect named in a felony arrest warrant was a passenger in a gold sports utility vehicle (SUV) that Mr. Swift was driving around Haines City. Accordingly, Officer Sweat began looking for Mr. Swift's vehicle. At approximately 8:30 that evening, Officer Sweat spotted the SUV at a convenience store. The SUV was illegally parked, and Officer Sweat activated the overhead lights on his police cruiser. Mr. Swiftwho was still in the vehicleleft the convenience store and parked in the driveway of a nearby residence.
Officer Sweat approached Mr. Swift, informed him that he had been illegally parked, and asked for his driver's license. Mr. Swift produced the requested license, and Officer Sweat returned to his police cruiser. The officer did not inform Mr. Swift that he was looking for the suspect named in the arrest warrant. Officer Sweat testified at trial that when he had spoken with Mr. Swift through the SUV's open driver's window, he saw another man sitting in the back seat on the passenger side of the vehicle. According to Officer Sweat, the passenger in the back seat fit the description of the suspect named in the arrest warrant. Because Officer Sweat anticipated an arrest of the passenger, he called for assistance.
Sergeant Michael Green responded to Officer Sweat's call for assistance. When Sergeant Green arrived, Officer Sweat briefed his sergeant on the situation. Then both officers approached the SUV's passenger side. Sergeant Green stationed *1198 himself at the vehicle's front door; Officer Sweat took a position to Sergeant Green's left at the rear door. The front door's window was partially open so that Sergeant Green could see Mr. Swift, but the rear door's window was closed. The SUV's windows were tinted, and neither Officer Green nor Officer Sweat could see the passenger. Notably, the SUV's engine was still running.
As soon as the two officers had taken their positions on the passenger side of the vehicle, Officer Sweat tried to open the rear door to apprehend the passenger seated in the back. This attempt failed because the door was locked. Next, the officers began to shout commands. They ordered Mr. Swift to turn off the vehicle's engine. They yelled for the passenger to open the rear door. The men in the SUV did not comply with either of these commands. Instead, Mr. Swift backed out of the driveway and left the scene. A chase involving Officer Sweat, Sergeant Green, and other police officers ensued. When Mr. Swift was ultimately apprehended at the conclusion of the chase, the passenger was not in the SUV.
The circumstances surrounding Mr. Swift's departure from the driveway require closer examination because they form the basis for the aggravated assault charge. Officer Sweat had parked his police cruiser on the driver's side of the SUV and slightly to its rear. Sergeant Green had parked on the SUV's passenger side. Thus the SUV was partially blocked in the driveway. When the officers approached the vehicle's passenger side and began to shout commands, Mr. Swift initially backed up and then pulled forward. This maneuver was apparently necessary for Mr. Swift to position the SUV so that he could back it out of the driveway without striking Officer Sweat's police cruiser.
After the SUV began to move, both officers drew their handguns. At this point, Officer Sweat was still standing at the rear door on the vehicle's passenger side. When Mr. Swift pulled forward after initially backing up, Officer Sweat ran behind the SUV. Then, as Mr. Swift began backing up again, Officer Sweat had to step out of the way of the oncoming vehicle to avoid being hit. While Officer Sweat was getting out of the way, Mr. Swift successfully cleared the officer's police cruiser and backed into the street. At this point, Mr. Swift drove away from the scene.
Officer Sweat and Sergeant Green were the only State witnesses to testify concerning the events that formed the basis for the aggravated assault charge against Mr. Swift. Sergeant Green candidly admitted that when he and Officer Sweat approached the SUV's passenger side, the entire encounter with Mr. Swift lasted less than thirty seconds. During most of this brief encounter, Officer Sweat had been standing at the SUV's rear door. After Officer Sweat left his position of relative safety to run behind the SIN when it pulled forward, he could not have been behind the vehicle for more than a few seconds before he was forced to step out of the SUV's path as it backed up a second time. Under these circumstances, it is not surprising that neither officer could establish that Mr. Swift knew that Officer Sweat had left his position at the SUV's side and run to its rear.

The Proceedings in the Circuit Court
The State filed a three-count information against Mr. Swift. The charges were aggravated assault on a law enforcement officer with a deadly weapon, a second-degree felony, sections 775.0823, 784.021, and 784.07, Florida Statutes (2004); resisting law enforcement officers without violence, a first-degree misdemeanor, section 843.02, Florida Statutes (2004); and fleeing or attempting to elude a law enforcement *1199 officer in a marked patrol vehicle with siren and lights activated, a third-degree felony, section 316.1935, Florida Statutes (2004). At trial, defense counsel timely moved for a judgment of acquittal on the aggravated assault charge, arguing that there was "no evidence that [Mr. Swift] intentionally or knowingly threatened Officer Sweat." The able trial judge characterized the State's proof as "not the strongest case that I have ever seen of aggravated assault," but he denied the defense motion. The jury returned a verdict finding Mr. Swift to be guilty as charged of all three offenses.
After the jury returned its verdict, the trial court dismissed the charge of resisting without violence on the theory that it was subsumed within the other two charges. The trial court adjudged Mr. Swift to be guilty on the remaining charges and sentenced him to a term of seven and one-half years in prison on the aggravated assault charge and five years on the fleeing charge. The two sentences were designated to run concurrently.

Discussion
On appeal, the only issue Mr. Swift raises is the sufficiency of the evidence to support his conviction on the aggravated assault charge. Mr. Swift argues that the State failed to establish the elements of an assault. We agree.
Section 784.011, Florida Statutes (2004), defines an assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011(1). "The statute requires proof of three elements: (1) an intentional, unlawful threat; (2) an apparent ability to carry it out; and (3) creation of a well-founded fear that the violence is imminent." Benitez v. State, 901 So.2d 935, 937 (Fla. 4th DCA 2005) (citing Viveros v. State, 699 So.2d 822, 825 (Fla. 4th DCA 1997)). In order to establish an aggravated assault, the State must prove that the defendant had a specific intent to do violence to the person of another. See State v. Shorette, 404 So.2d 816, 817 (Fla. 2d DCA 1981); Lavin v. State, 754 So.2d 784, 787 (Fla. 3d DCA 2000).
Here, the evidence was sufficient to establish that Officer Sweat was in fear of imminent violence when Mr. Swift backed the SUV directly at him. However, "[t]he `threat' element addresses the defendant's intent, not the reaction of the person perceiving the word or act." Benitez, 901 So.2d at 937. Thus Officer Sweat's reaction was insufficient to establish that Mr. Swift intended to threaten him. The State was unable to establish that Mr. Swift knew that Officer Sweat had run behind the SUV during the minimal amount of time that elapsed after Mr. Swift pulled forward and before he began to back up a second time. Without question, the State established that Mr. Swift disregarded the officers' lawful commands to turn off the SUV's engine, but this did not tend to establish that Mr. Swift had a specific intent to threaten Officer Sweat. Absent such evidence, the trial court erred in denying the defense motion for a judgment of acquittal on the aggravated assault charge. See Beard v. State, 842 So.2d 174, 176-77 (Fla. 2d DCA 2003); Munday v. State, 254 So.2d 33, 34 (Fla. 3d DCA 1971).

Conclusion
For the foregoing reasons, we reverse Mr. Swift's judgment and sentence for aggravated assault on a law enforcement officer. We affirm his judgment and sentence for fleeing and attempting to elude a *1200 marked patrol vehicle with siren and lights activated.
Affirmed in part; reversed in part.
FULMER and DAVIS, JJ., Concur.
NOTES
[1] The defense's version of what happened varied substantially from the State's proof in various particulars. However, in reviewing the sufficiency of the State's evidence to survive a defense motion for judgment of acquittal, we apply a de novo standard of review and view the evidence in the light most favorable to the State. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002). Upon such review, if "a rational trier of fact eould find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Id.