DAVIS, Judge,
Dissenting.
Because the State did not establish that Mr. Pinkney intentionally and unlawfully threatened to do violence to Officer Zam-mitt, I would reverse. The evidence simply did not show that Mr. Pinkney knew or likely knew that Officer Zammitt was standing in his direction of travel. But I do agree with the majority to the extent that it recedes from Shorette, 404 So.2d at 817, based on that case’s misstatement of law that section 784.011(1) “requires proof of a specific intent to do violence to the person of another.” See generally Cambell v. State, 37 So.3d 948, 950 (Fla. 5th DCA 2010) (“The only intent inherent in the statute! ] is the intention to make a threat to do violence.”).
Additionally, I recognize that in Swift, 973 So.2d 1196, this court reiterated Shorette’s misstatement of the intent requirement of assault. However, as the Fifth District appropriately noted in Cambell, the actual analysis in Swift is legally sound despite any misuse of the Shorette language. The Cambell court noted that
the focus of the appellate court [in Swift ] was on whether or not there was evidence that Swift intended to threaten the victim.... Since the appellate court concluded that there was no evidence that Mr. Swift knew that the victim was behind his vehicle before he started to back up in the victim’s direction, its holding was that the State failed to prove that Mr. Swift intended his act of backing the car to be a threat to do violence to the victim.
37 So.3d at 950. Applying this analysis in the instant case, I conclude that the State’s evidence here similarly failed to establish that Mr. Pinkney’s act of reversing his vehicle was an intentional, unlawful threat to do violence to Officer Zammitt. Accordingly, I would reverse Mr. Pinkney’s judgment and sentence.
While there are differences between the facts in Swift and the instant case, I con- *580 elude that a review of the totality of the circumstances in both cases necessarily results in the same conclusion of law — that the State failed to present prima facie evidence of the elements of an assault.
To obtain a conviction on a charge of aggravated assault, the State must prove the basic elements of an assault as set out in section 784.011. See Benitez v. State, 901 So.2d 935, 937 (Fla. 4th DCA 2005). “An ‘assault’ is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.” § 784.011(1). This requires the State to prove three elements: “(1) an intentional, unlawful threat; (2) an apparent ability to carry it out; and (3) creation of a well-founded fear that the violence is imminent.” Benitez, 901 So.2d at 937. In this case, it is the intentional threat that I believe the State’s evidence fails to sufficiently prove. Based on the record evidence, I disagree with the majority opinion for three reasons.
First, I disagree with the majority’s conclusion that the jury could infer from the circumstances that Mr. Pinkney saw Officer Zammitt or otherwise knew he was in the path of the vehicle. The State presented no direct evidence of this fact. There was no testimony that Officer Zam-mitt engaged Mr. Pinkney in any way prior to the vehicle beginning to move, and there was no evidence establishing that Mr. Pinkney was aware that Officer Zam-mitt was in the travel path of the vehicle. Although the incident occurred in daylight, the limited evidence of Mr. Pinkney’s knowledge was Officer Zammitt’s testimony. Officer Zammitt was engaged with the passenger and was to the right side of the vehicle but was able to see a person inside the vehicle. This testimony is purely circumstantial evidence of Mr. Pinkney’s knowledge.
Where, as here, the evidence of the defendant’s guilt is entirely circumstantial, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. State v. Law, 559 So.2d 187, 188 (Fla.1989). This is so regardless of how strongly the evidence may suggest the defendant’s guilt. Id. To be sure, the question of whether the evidence fails to exclude all reasonable hypotheses of innocence ultimately is for the jury, and a conviction that is supported by substantial, competent evidence will not be reversed. Jackson v. State, 995 So.2d 535, 539 (Fla. 2d DCA 2008) (citing Law, 559 So.2d at 188). But if the State does not offer evidence that is inconsistent with the defendant’s hypothesis, “ ‘the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law.’ ” Law, 559 So.2d at 189 (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)).
Bennett v. State, 46 So.3d 1181, 1183 (Fla. 2d DCA 2010) (alteration in original).
It may be true, as the State argues, that the fact that Officer Zammitt saw someone inside the vehicle could suggest that Mr. Pinkney in turn saw the officer outside the vehicle. However, the totality of the circumstances supports Mr. Pinkney’s reasonable hypothesis of innocence that he did not see Officer Zammitt, that he therefore did not intentionally drive his vehicle in the direction of Officer Zammitt in an attempt to threaten the officer, and that instead he intentionally drove the vehicle in reverse in an attempt to flee the scene and escape Officer Knick, who was ap *581 proaching his driver’s side door.[5] There is nothing in the record to suggest that Mr. Pinkney turned his head toward Officer Zammitt or that Officer Zammitt made eye contact with Mr. Pinkney. In fact, Officer Knick, who arrived with Officer Zammitt, testified that while Officer Zammitt dealt with the passenger on the passenger’s side of the vehicle, it was Officer Knick who was “making contact with the driver’s side.” From this testimony, it could be logically inferred that Mr. Pinkney’s attention was on Officer Knick and not Officer Zammitt. Even if Mr. Pinkney heard Officer Zammitt giving orders to the passenger who had just exited the vehicle, no evidence established that Mr. Pinkney knew that Officer Zammitt was behind the vehicle or in its path of travel. Indeed, no evidence established that Mr. Pinkney heard Officer Zammitt. Based on the totality of these circumstances, I conclude that from the State’s evidence the jury could not infer Mr. Pinkney’s knowledge that Officer Zammitt was in the path of travel and that therefore the State did not refute Mr. Pinkney’s reasonable hypothesis of innocence.
Second, even if the State’s evidence was sufficient to sustain the inference that Mr. Pinkney knew Officer Zammitt was somewhere nearby, I conclude that the State’s evidence was insufficient to establish that Mr. Pinkney intended to threaten Officer Zammitt by driving his vehicle in the officer’s direction.
A case presenting direct evidence of someone’s intent is rare, and as such, it is proper and commonly the case for the State to rely solely on circumstantial evidence to establish intent in the absence of direct evidence. State v. Waters, 436 So.2d 66, 71 (Fla.1983) (“The element of intent, being a state of mind, often can *582 only be proved by circumstantial evidence.”). The present case turns on such circumstantial evidence.
I agree with the majority that if the State had shown that Mr. Pinkney intentionally did an act that was “substantially certain” to threaten Officer Zammitt, such would provide sufficient circumstantial proof to allow the jury to infer Mr. Pinkney’s intent. Cf. C.B., 810 So.2d at 1073. In C.B., a minor was charged with battery as the result of his throwing a cigarette lighter on the floor and the lighter bouncing up and striking a school official. In determining whether these circumstances supported the intent element of the battery charge, the court determined that the State was required “to prove that the defendant threw the lighter in such a way that it was substantially certain that it would hit the teacher’s ankle.” Id. at 1073. The court concluded that “[t]he evidence of the defendant’s intent was circumstantial. The evidence was insufficient to sustain a conviction[ ] because it was consistent with the reasonable hypothesis of innocence that the defendant threw the lighter at the floor and hit his teacher only because of a crazy bounce.” Id.
Similarly, the only evidence here of Mr. Pinkney’s intent consisted of the facts that he drove his car in reverse and that the officer had to move out of the way of the vehicle. However, as I previously stated, that evidence is equally consistent with the reasonable hypothesis that Mr. Pinkney was simply trying to flee the situation. The evidence did not show that Mr. Pink-ney knew that Officer Zammitt was in — or was substantially certain to be in — the path of travel. Accordingly, I conclude that the evidence is insufficient to show that Mr. Pinkney intended to drive his vehicle in the officer’s direction for the purpose of threatening the officer.
Third, I conclude that the State’s evidence is also insufficient to sustain a conviction for assault because any inference that Mr. Pinkney intentionally threatened Officer Zammitt by driving at him would have to be based on the inference that Mr. Pinkney knew where Officer Zammitt was located. In other words, under these circumstances, any inference of intent would have to be based on an inference of fact. This is an impermissible stacking of inferences. See Miller v. State, 770 So.2d 1144, 1149 (Fla.2000) (“ ‘Circumstantial evidence is insufficient when it requires pyramiding of assumptions or inferences in order to arrive at the conclusion of guilt.’ ” (quoting Brown v. State, 672 So.2d 648, 650 (Fla. 4th DCA 1996))).
It is on this third point that I specifically disagree with the majority as to the application of the law to these facts. As the majority correctly concludes, the statute requires “proof of an intentional threat that creates a fear of imminent violence.” The majority suggests that the evidence in our record is sufficient to allow a reasonable inference that Mr. Pinkney knew the officer’s location when he began to drive the car in reverse. The majority then concludes that based on Mr. Pinkney’s knowledge of the officer’s location, it can be inferred that Mr. Pinkney’s act of driving in that direction is proof of his intent to commit an act that was substantially certain to place the officer in fear of imminent danger. What the majority does not acknowledge, however, is that the evidence that allows the jury to infer an “intentional threat” is circumstantial evidence presented to prove intent, not direct proof of that intent. See C.B., 810 So.2d at 1073. Thus, the majority’s analysis calls for the inference of Mr. Pinkney’s intent to be imper-missibly stacked on the inference of his knowledge of the officer’s location.
*583 Accordingly, I disagree with the majority on three grounds. First, the evidence does not support the inference that Mr. Pinkney knew that Officer Zammitt was located in the path of his vehicle. Second, the evidence does not support the inference that Mr. Pinkney intended to threaten the officer by committing an act — driving at him — that was substantially certain to place the officer in fear. And third, the only way for the jury to find the necessary intent to threaten is by impermissibly stacking inferences. For these reasons, I conclude that the trial court erred in denying Mr. Pinkney’s motion for judgment of acquittal as to the assault on a law enforcement officer charge, and I would reverse his judgment and sentence on that count.
SILBERMAN, C.J., and NORTHCUTT and WALLACE, JJ., Concur.

. The majority opinion suggests that Mr. Pinkney’s theory of defense was that of mistaken identity and that this somehow limits his argument on his motion for judgment of acquittal. First, as is his constitutional right, Mr. Pinkney presented no evidence and did not testify. I acknowledge that Mr. Pinkney’s attorney did question whether the State’s evidence proved beyond a reasonable doubt that Mr. Pinkney was the person who committed the crime. However, this was a reasonable doubt argument based on the inconsistencies in the State’s testimony and what defense counsel maintained was a lack of evidence. His argument was that the evidence presented by the State proved nothing beyond a reasonable doubt.
In the portion of defense counsel’s closing argument quoted by the majority, counsel was clearly referring to Mr. Pinkney when he described the driver as a sixteen-year-old juvenile. The record shows that Mr. Pinkney’s date of birth is November 12, 1990, and the date of the incident was October 1, 2006. I therefore conclude that counsel’s closing was not a mistaken identity argument — i.e., that Mr. Pinkney was really somewhere else and the witnesses identified the wrong person— but rather was that the evidence was so inconclusive that the jury could not find beyond a reasonable doubt that the State had proved that Mr. Pinkney had committed the offenses with which he was charged.
But even if the defense did argue mistaken identity, that does not alter the scope of this review. Mr. Pinkney’s argument for judgment of acquittal was that the State had failed to prove "that there was any intent on the part of Mr. Pinkney to assault Officer Zam-mitt.” It is at the close of the State's case that the trial court must weigh the circumstantial evidence presented by the State against a reasonable hypothesis of innocence. See Bussell v. State, 66 So.3d 1059, 1061 (Fla. 1st DCA 2011) ("Our review is limited to whether the evidence the State presented in [its] case-in-chief was legally sufficient.”). Once the trial court denied that motion, Mr. Pinkney was not precluded from asserting a mistaken identity defense or any other defense during his case. The trial court's error occurred in failing to recognize the insufficiency of the State’s evidence at the end of the State’s case. The fact that counsel argued mistaken identity in closing argument does not waive the argument that the State failed to prove the required statutory elements.