TAYLOR, J.
Appellant, Jorge Ivan Ayalavillamizar, appeals his conviction for first degree murder. He raises four issues, arguing that *495 the trial court erred in: (1) denying his motion for judgment of acquittal because the circumstantial evidence was insufficient to support his conviction; (2) permitting the state to elicit irrelevant, inflammatory evidence that appellant struck the victim’s son in the past and that the victim had an abortion; (3) permitting the state to demonstrate how the murder weapon struck the victim’s head and to show photographs of the victim’s injuries, and (4) failing to give appellant’s proposed special jury instruction on circumstantial evidence. On all these issues, we affirm.
Appellant was charged with premeditated first-degree murder for the November 2004 bludgeoning death of his girlfriend, Bianca Sierra. The evidence presented at trial established that appellant and the victim lived together, appellant was aware that the victim planned on ending their romantic relationship, and appellant was upset that the victim had terminated her pregnancy.
Appellant was with the victim in her bedroom on the night of the murder. That night, the victim’s nine-year old daughter heard screams coming from the bedroom, and around 8:00 a.m. the next morning she noticed that the victim’s vehicle was missing. Later that morning, when first responders came to the apartment, they found the victim’s dead body behind her locked bedroom door. The victim had been struck on the head at least three or four times, suffered multiple fractures to her skull, and did not have any defensive wounds on her body. The victim’s blood was found on appellant’s sledgehammer, which was recovered along with his other work tools from a closet in the apartment. The victim’s injuries were consistent with the sledgehammer being the murder weapon. Appellant’s palm print was found on a headboard directly above the victim’s head.
The morning after the murder, appellant went to a friend’s house and asked for a change of clothing. He told the friend that he attempted to commit suicide because he had a fight with the victim. Appellant then fled South Florida, leaving behind his possessions. The victim’s car was found abandoned in Jacksonville, Florida. Nearly five years after the victim’s murder, appellant was apprehended in Brownsville, Texas.
Appellant’s motion for judgment of acquittal at the end of the state’s case was denied. Appellant did not present any evidence at trial, and his renewed motion for judgment of acquittal was also denied. The jury found appellant guilty of first degree murder, prompting this appeal.
With respect to appellant’s first issue on appeal, we conclude that the trial court properly denied appellant’s motion for judgment of acquittal. Even assuming, as appellant argues, that the state’s case was wholly circumstantial and subject to the special standard of review for circumstantial evidence cases, the state presented evidence inconsistent with any reasonable hypothesis of innocence. See State v. Law, 559 So.2d 187, 188 (Fla.1989) (“Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.”).
In this case, all the circumstances pointed to appellant as being the perpetrator. The state proved that appellant had a motive to murder the victim and introduced evidence from which a jury could find beyond a reasonable doubt that appellant was the person who committed the murder. The state also presented evidence of appellant’s consciousness of *496 guilt — his flight and suicidal behavior after the victim’s death.
Further, the state introduced evidence, taken as a whole, that is inconsistent with appellant’s theory that an intruder committed the murder after appellant left the apartment. There were no signs of forced entry into the apartment and no valuables were missing from the residence. However, both appellant and the victim’s car were gone when the victim’s body was found. The victim’s car was missing since at least 3:00 a.m. When the victim’s body was found at 7:30 a.m., rigor mortis was already present, suggesting that she had already been dead for at least three to six hours. The notion that some random intruder broke into the victim’s apartment shortly after appellant left, found appellant’s sledgehammer in the closet, killed the victim with the hammer at least three to six hours before her body was found, and did so without taking any valuables, is not a reasonable hypothesis of innocence.
In his next issue on appeal, appellant challenges two of the trial court’s eviden-tiary rulings: admission of evidence that appellant struck the victim’s son and that the victim had an abortion.
A trial court’s decision on the admissibility of evidence is reviewed under an abuse of discretion standard. Hudson v. State, 992 So.2d 96, 107 (Fla.2008). That discretion, however, is limited by the rules of evidence. Id.
First, appellant argues that the trial court abused its discretion in allowing the state to present testimony that he had hit the victim’s young son in the past. Appellant argues that he did not open the door to such evidence by eliciting testimony from the victim’s mother and daughter that they had never seen him strike the victim.
The evidentiary principle of “opening the door” allows the admission of otherwise inadmissible testimony to “qualify, explain, or limit” testimony or evidence previously admitted. Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000). “To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled.” Bozeman v. State, 698 So.2d 629, 630 (Fla. 4th DCA 1997). The “opening the door” concept is based on considerations of fairness and the truth-seeking function of a trial. Id. at 631.
“The mere fact that testimony may be characterized as incomplete or misleading, however, does not automatically trigger the admission of otherwise inadmissible evidence under the ‘opening the door’ rule.” Siegel v. State, 68 So.3d 281, 288 (Fla. 4th DCA 2011). “Rather, the State must demonstrate a legitimate need to resort to such evidence to correct a false impression. Otherwise, the ‘opening the door’ rule threatens to become a pretext for the illegitimate use of inadmissible evidence, and the fairness-promoting purpose of the rule is lost.” Redd v. State, 49 So.3d 329, 333 (Fla. 1st DCA 2010) (citations omitted).
Here, defense counsel elicited testimony from the victim’s daughter and mother that they never saw appellant hit the victim. In turn, the prosecutor sought to introduce evidence that appellant had struck the victim’s son. The prosecutor argued that this evidence was admissible to rebut appellant’s false suggestion that he was a non-violent person who had never committed domestic violence within the family unit. The trial court overruled appellant’s objection to this evidence and allowed the victim’s daughter to testify that appellant had been violent toward her little *497 brother “once or twice” in a “mostly” disciplinary fashion, but “not really” like a father to a son.
Although we disagree with the state’s contention that the testimony elicited by appellant that the mother and daughter never saw him hit the victim opened the door to evidence that the daughter saw appellant strike the victim’s son, any error in admitting this testimony was harmless. Here, the testimony was brief, isolated, and never repeated or commented upon in the state’s closing argument. Although improperly admitted evidence of other crimes or bad acts is presumptively harmful, see Czubak v. State, 570 So.2d 925, 928 (Fla.1990), the evidence of collateral bad acts in this case — that appellant had struck the victim’s son once or twice in a mostly disciplinary fashion — was slight and not a feature of the trial. See Rodriguez, 753 So.2d at 43 (admission of collateral crime testimony indicating that the defendant had a police “ID number” and used aliases was harmless error because such testimony consisted of isolated comments in the course of lengthy witness presentations). We conclude that there is no reasonable possibility that the error, if any, contributed to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Second, appellant argues that evidence that the victim had an abortion was both irrelevant and highly prejudicial. We disagree. Evidence that appellant was very upset about the victim’s decision to have an abortion was admissible to show his motive for the murder and to rebut the defense’s argument that appellant had no motive to murder the victim. See Black-wood v. State, 777 So.2d 399, 407 (Fla.2000) (holding that the witness’s statements about the victim’s comments to appellant regarding her pregnancy, past abortions, and intention not to see him anymore were material to the issue whether appellant possessed a motive to kill the victim).
Appellant next argues that the trial court erred in denying his motion for mistrial based on the prosecutor’s conduct during closing argument. He contends that the prosecutor’s act of repeatedly and loudly slamming appellant’s sledgehammer during closing argument was an improper attempt to inflame the passions of the jury. He further complains that the admission of numerous gory photographs of the victim’s injuries improperly invited the jury to base its verdict on emotion. The cumulative errors in this case, appellant argues, require reversal of his conviction.
The control of closing argument is within a trial court’s discretion. Jackson v. State, 89 So.3d 1011, 1018 (Fla. 4th DCA 2012). “Likewise, a trial court’s ruling on a motion for mistrial is reviewed for an abuse of discretion, and the court should grant a mistrial only where the error is so prejudicial that it vitiates the entire trial.” Id.
In this case, the prosecutor opened his closing argument by urging the jury to consider the criminal nature of the act of repeatedly smashing a four-pound sledgehammer over a person’s skull. He demonstrated the act by loudly striking a hammer against the podium, a chair, and a marble surface. Appellant objected and moved for a mistrial, which the trial court denied.
As a preliminary matter, we find that appellant preserved this issue for review. “Ordinarily, to preserve a claim based on improper comment, counsel has the obligation to object and request a mistrial. If counsel fails to object or if, after having objected, fails to move for a mistrial, his silence will be considered an implied waiver.” Nixon v. State, 572 So.2d 1336, 1340 (Fla.1990). However, where a timely *498 objection is made to an improper comment, and the objection is overruled, thus rendering futile a motion for mistrial, the issue is properly preserved for appellate review even though the defendant did not ask for a mistrial. Simpson v. State, 418 So.2d 984, 986-87 (Fla.1982).
Here, appellant objected to the prosecutor’s demonstration with the hammer and moved for a mistrial. This was sufficient to preserve the issue for appellate review. Although the state cites cases finding a waiver of the issue where the defendant declined a trial court’s offer of a curative instruction, in those cases there was no indication that defense counsel ever moved for a mistrial. See Diaz v. State, 513 So.2d 1045, 1049 (Fla.1987); Jean v. State, 638 So.2d 995, 997 (Fla. 4th DCA 1994); Dormezil v. State, 754 So.2d 168, 170 (Fla. 5th DCA 2000). If defense counsel believes that a curative instruction would be insufficient and requests a mistrial instead, the issue should be considered preserved. Cf. Henderson v. State, 789 So.2d 1016, 1018 (Fla. 2d DCA 2000) (“When any curative instruction would be insufficient, the trial court should grant a mistrial.”).
On the merits, we find that the prosecutor’s conduct of repeatedly slamming appellant’s hammer down in order to demonstrate the blows to the victim’s head was designed to evoke an emotional response to the crime and fell outside the realm of proper argument. See Taylor v. State, 640 So.2d 1127, 1134-35 (Fla. 1st DCA 1994) (“In this case, the prosecutor’s act of striking a table with the murder weapon and his conjecture concerning the child’s dying words were harmful error ... The activities were designed to evoke an emotional response to the crimes or to the defendant, and fall outside the realm of proper argument.”); see also Nardone v. State, 798 So.2d 870, 874-75 (Fla. 4th DCA 2001) (cumulative effect of prosecutor’s conduct in repeatedly striking the table with the aluminum strip with such force as to send drywall scattering around the courtroom, coupled with improper opinion testimony, was harmful error; however, it was unnecessary to decide whether the prosecutor’s demonstration, standing alone, was so egregious as to warrant a new trial).
In this case, although the prosecutor’s conduct in closing argument was improper, it was not so egregious, standing alone, to warrant a new trial. See Spriggs v. State, 392 So.2d 9, 10 (Fla. 4th DCA 1980) (admonishing prosecutor for picking up knife admitted into evidence and sticking it into jury rail during closing argument, but finding the error harmless); Clark v. State, 553 So.2d 240, 242 (Fla. 3d DCA 1989) (finding that prosecutor’s conduct in aiming unloaded murder weapon at jury and pulling the trigger was error, but holding the error harmless).
In addition, we conclude that the trial court did not abuse its discretion in allowing the state to show the jury six autopsy photographs of the victim’s injuries. The photographs admitted in this case were not so inflammatory as to create undue prejudice in the minds of the jurors. The trial court conscientiously considered all of the photos the state sought to introduce, rejecting the two most gruesome photographs as being cumulative. The photographs that were admitted were relevant to issues concerning the manner in which the crime was committed, the nature and extent of injuries, the force of the violence used, and the killer’s intent. They were also relevant to explaining the medical examiner’s testimony. See McWatters v. State, 36 So.3d 613, 637 (Fla.2010) (no abuse of discretion to admit into evidence four autopsy photographs depicting decomposed heads, necks, and torsos *499 of the victims, as the photographs were relevant where they were used by the medical examiner to explain the condition of the bodies and the manner and cause of death). Moreover, gory photographs may be admitted if they properly depict the factual conditions relating to the crime and aid the jury in finding the truth. See Mazzara v. State, 437 So.2d 716, 718 (Fla. 1st DCA 1983).
Finally, we reject appellant’s argument that the trial court abused its discretion in refusing to instruct the jury on the state’s burden of proof in circumstantial evidence cases. The Florida Supreme Court has consistently held that it is within the trial court’s discretion to refuse to give the circumstantial evidence instruction, which was removed from the standard jury instructions over thirty years ago. See, e.g., Gosciminski v. State, 132 So.3d 678, 708-709 & n. 19 (Fla.2013); Jackson v. State, 25 So.3d 518, 530-31 (Fla.2009); Floyd v. State, 850 So.2d 383, 400 (Fla.2002).
Accordingly, we affirm the judgment and sentence in this case.

Affirmed.

DAMOORGIAN, C.J., and GROSS, J„ concur.