DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**DANIEL LAMONT SEPHES,**
Appellee.

No. 4D18-981

[January 9, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2017-CF-003784-AXXX-MB.

Ashley Brooke Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellee.

CONNER, J.

The State appeals, contending the trial court erred in granting post-trial a renewed motion for judgment of acquittal, after a jury found Defendant Daniel L. Sephes guilty as charged. The State contends that it proved by direct evidence that Defendant was guilty and that the trial court improperly applied the circumstantial evidence standard in granting the acquittal. We determine that the trial court used the correct standard, but improperly applied it. Thus, we reverse and remand the case for the trial court to proceed with an appropriate sentencing disposition.

*Background*

Defendant was charged with being a felon in possession of a firearm or ammunition. Prior to trial, Defendant's motion for statement of particulars was granted, and the State responded by alleging that Defendant possessed a firearm on March 13, 2015.

At trial, a law enforcement officer testified that on March 13, 2015, around 6:30 a.m., he was on a police motorcycle and conducted a traffic stop on a speeding car. After the officer turned on his blue light to signal the stop, the car did not stop right away, but eventually turned into the entrance of a gated apartment complex and stopped. As the officer was getting off of his motorcycle, the driver's side door of the car opened, and he observed a man get out of the driver's seat, go around the open door and start to run towards the complex. The officer testified that he was unable to describe the man other than to give his sex and race and describe him as about the same height and weight as the officer – six-foot and 250 pounds.

The officer testified that as he started to chase the man, he heard "[s]omething metallic hit the payment [sic] just at the front of the car." He said he could not see what the object was until he got around the car, which he estimated took "[l]ike a second," and saw that the object was a handgun. He estimated that the firearm was about ten or twelve feet in front of the car. He then testified:

> Um, I saw the firearm and I looked at the male. The male looked back at me. He looked at the firearm, and I said, "Stop, police." I didn't want him going towards the gun. He turned around and ran back into the apartment complex.

The officer further testified that it was his impression that the fleeing man turned around to look at him and the firearm as if he wanted to go back and retrieve the firearm.

On cross-examination, the officer admitted that he did not see anything in the fleeing person's hand, any bulges on the person, or the person gripping his waistband. He conceded he did not remember specific identifying factors regarding the person who fled, such as hair or facial hair, and also stated that if he were given a photo line-up, he probably could not identify the person he saw flee.

The officer testified that he stayed in the area of the car and firearm because he did not want to leave the firearm unattended. As he was waiting for a crime scene investigator to arrive, a woman came from within the apartment complex and said, "That's my car." The woman was later identified as Defendant's girlfriend.

The crime scene investigator testified that he took the firearm back to the lab and swabbed it for DNA. He testified that he used one swab to swab the outside of the firearm, including the grips, trigger, slide, and

2

sights, and then another swab to swab the magazine. He explained that he preferred to swab the top of the magazine, since "as you're loading bullets into the magazine, you're pushing them down into the top of the magazine, so there's a lot of skin contact as such where I normally will swab the opening of the top of the magazine to collect DNA." He also said he swabbed the live rounds inside the magazine. On cross-examination, he admitted that he did not know when the magazine was loaded. The crime scene investigator testified that he tried to process the firearm for fingerprints, but he did not get any useable prints.

The car was towed to the impound lot and searched. Men's clothing was found on the backseat, as well as a dry cleaning receipt in the open glovebox. The receipt was in the name of Defendant and was admitted as an exhibit.

Two DNA analysts were called by the State to testify. The combination of their testimony established that the swab of the outside of the firearm revealed there were three or more contributors, one of whom was a male, but due to the complexity of the mixture, no DNA profile could be identified. As to the swab of the magazine, the sample matched Defendant's DNA.

Cross-examination of one of the DNA analysts revealed that a person's DNA can be transferred to an object in multiple ways without the person actually touching the object. The cross-examination revealed a transfer of DNA could occur without a person touching the object by: (1) a person shaking hands with a third person and the third person later touching the object; (2) the object coming in contact with clothing worn by a person, since DNA is very prone to rubbing off on clothing; and (3) the object being close by when a person sneezes.

The State called the owner of the vehicle to testify. The owner was the mother of the woman who came up to the motorcycle officer and claimed the vehicle was hers. The owner testified that she allows her daughter to use her vehicle. She also testified that she knew Defendant and that her daughter was dating Defendant. The owner testified as to the numbers composing her daughter's cellphone number.

The State called the records custodian for inmate telephone calls at the jail. The records custodian testified that while Defendant was in jail, there were 771 attempted connections to the daughter's cellphone number by the Defendant attempting to place a call from the jail, and 260 completed calls to the daughter's cellphone number.

The State rested and Defendant moved for a judgment of acquittal. Defendant put forth two reasonable hypotheses of innocence: (1) that there was a secondary transfer of Defendant's DNA onto the firearm; and (2) that Defendant touched the magazine on a different and unknown date rather than on March 13, 2015. The motion was denied. Defendant rested without presenting evidence and then renewed his motion for judgment of acquittal. The trial court expressed doubts about the case, reserved ruling on the renewed motion, and allowed the jury to deliberate on the case.

After deliberating, the jury found Defendant guilty as charged, including the special interrogatory finding that Defendant actually possessed the firearm. After the verdict, the trial court allowed the State and Defendant to submit memoranda of law regarding the reserved ruling on the renewed motion for judgment of acquittal. After considering both memoranda, the trial court granted the motion. Applying the circumstantial evidence standard, the trial court found that the State's evidence was not inconsistent with the two reasonable hypotheses advanced by Defendant. The State gave notice of appeal.

*Appellate Analysis*

The State's sole argument on appeal is that the trial court erred in granting Defendant's renewed motion for judgment of acquittal following the jury's verdict finding Defendant guilty of felon in possession of a firearm. We apply a *de novo* standard of review. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002).

The State argues that the circumstantial evidence standard should not apply in this case, because the facts at issue in this case, the time at which Defendant's DNA was deposited on the firearm and how it was deposited, are not elements of the crime. We disagree with the State's argument that the circumstantial evidence standard does not apply. As our supreme court explained in *Knight v. State*, 186 So. 3d 1005 (Fla. 2016):

> We now expressly hold that the circumstantial evidence standard of review applies only where all of the evidence of a defendant's guilt—i.e., the evidence tending to show that the defendant committed or participated in the crime—is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence.

*Id.* at 1010. Applying *Knight*, two of the important parts of this standard are whether *the defendant* committed or participated in *the crime*. Here, the two facts at issue – Defendant's identity and how Defendant's DNA got

on the firearm—go to whether *Defendant* committed the *crime*. More importantly, although the DNA evidence in this case shows that Defendant's DNA was on a portion of the firearm at the time it was seized by law enforcement, such evidence does not show, by itself, his involvement in a *crime*. That is because the DNA evidence presents the possibility his DNA was transferred to the firearm without him being in possession of it or touching it. Thus, we agree with Defendant that the circumstantial evidence standard applies to the ruling on the motion for judgment of acquittal.

"When the evidence of guilt is wholly circumstantial, it must be inconsistent with any other reasonable hypothesis of innocence." *Jackson v. State*, 180 So. 3d 938, 949 (Fla. 2015). Therefore, we next look to Defendant's reasonable hypotheses of innocence, and determine if the State provided any evidence inconsistent with the theories.

The trial court, as well as Defendant, heavily rely on our decision in *Finley v. State*, 139 So. 3d 940 (Fla. 4th DCA 2014) in support of the conclusion that the State's evidence was not inconsistent with Defendant's hypothesis of innocence. Although the facts of that case are somewhat similar to the facts of the instant case, the facts in *Finley* that we found determinative demonstrate why Defendant was not entitled to an acquittal in this case.

In *Finley*, the defendant was also charged with felon in possession of a firearm, where officers responded to a burglary of defendant's home, found his home had been "ransacked," and "found a handgun lying on a box spring left exposed by an overturned mattress." *Id.* at 941. The burglar was apprehended as officers were responding to the scene. *Id.* Officers dusted the handgun and magazine for fingerprints, and none were found. *Id.* They also swabbed the handgun and magazine for DNA, finding a match to the defendant. *Id.* However, the DNA expert testified that there was a second contributor of DNA, and testified regarding "secondary transfer" of DNA, whereby DNA can be transferred from one object to a second, without the DNA owner touching the second object. *Id.* The defendant moved for a judgment of acquittal at the end of the State's case-in-chief, which the trial court denied, the jury found the defendant guilty, and the defendant appealed. *Id.*

On appeal, we first addressed whether the State's evidence was direct or circumstantial, and found that the circumstantial evidence standard applied. *Id.* at 942. Applying the special standard, we found that the trial court erred in denying the defendant's motion for judgment of acquittal, because the State failed to provide evidence inconsistent with defendant's

reasonable hypothesis of innocence: that the handgun was left by the burglar, and the DNA evidence on the handgun was the result of a secondary transfer. *Id.* at 943. We explained that there was no evidence presented inconsistent with the defendant's theory, such as: (1) the burglar testifying that the gun was not his; (2) a test using the burglar's DNA to provide evidence to rebut the hypothesis; or (3) a DNA test using separate swabs from multiple areas of the handgun and magazine, so it was not clear *where* the defendant's DNA was found on the handgun or magazine. We concluded that "[t]here was no evidence provided as to *when* or *how* the DNA evidence became present on the handgun." *Id.*

In this case, the trial court granted the renewed motion for judgment of acquittal on the basis that Defendant advanced two reasonable hypotheses of innocence that: (1) the DNA found on the firearm was due to secondary transfer; and (2) his DNA was deposited on the firearm prior to March 13, 2015. As to the first hypothesis of innocence, Defendant argued that the firearm *may* at some point have been on the pile of clothes on the backseat of the car, those clothes *may* have belonged to Defendant, and the clothes *may* have had his DNA on them, which would have served as a medium for a transfer of his DNA. Additionally, Defendant argued to the jury that the deposit of his DNA could have occurred by transfer when some *unknown and unidentified* person touched the magazine after having touched him, some *unknown and unidentified* person had contact with some other *unknown and unidentified* object that Defendant touched and subsequently the other person touched the magazine, or Defendant may have sneezed in the presence of a third *unknown and unidentified* person who then touched the magazine.

The problem with Defendant's hypotheses of innocence, based on a secondary transfer of his DNA to the firearm, is that his theories do not present *reasonable* hypotheses, since they rely on multiple layers of speculation. *Cf. Ayalavillamizar v. State*, 134 So. 3d 492, 496 (Fla. 4th DCA 2014) ("The notion that some random intruder broke into the victim's apartment shortly after appellant left, found appellant's sledgehammer in the closet, killed the victim with the hammer at least three to six hours before her body was found, and did so without taking any valuables, is not a *reasonable* hypothesis of innocence.").

More importantly, the primary hypothesis of transfer from touching clothing on the back seat of the car fails to account for the fact that Defendant's DNA was found *inside* the firearm. Finding Defendant's DNA inside of the firearm would be inconsistent with the hypothesis of secondary transfer, since it does not appear logical, and therefore reasonable, that the magazine would have been separated from the firearm

6

while lying on the clothing.  This is a significant difference from the facts of *Finley*, where it was unknown as to which portion of the firearm the defendant's DNA was found.  *See Finley*, 139 So. 3d at 943.

Likewise, Defendant's theories that he shook hands with some third party or sneezed in close proximity to the firearm, and afterwards a third person loaded the magazine into the gun rely on multiple levels of speculation, including that this unknown and unidentified person knew the car owner or her daughter, and also had access to the car that was stopped by the officer on March 13.  Thus, we conclude the evidence that Defendant's DNA was found inside the firearm was sufficient to rebut Defendant's reasonable hypothesis of innocence based on a theory of secondary transfer of his DNA.  Additionally, the facts of this case make *Finley* inapposite, where the reasonable hypothesis regarding secondary transfer was based on a potential *known* second party that could have possessed the firearm – the burglar.  Therefore, while the proffered hypothesis of innocence was reasonable in *Finley*, the proffered hypotheses in this case were not because of the multiple layers of speculation.

Defendant's second reasonable hypothesis of innocence is that his DNA was deposited on the firearm on a different date than March 13, 2015. That hypothesis is grounded on the theory that the State had to prove that Defendant's DNA was deposited on the gun on March 13, 2015.  Pretrial, the defense sought to firm up this hypothesis by obtaining a statement of particulars which sought "[t]he *date* that Sephes is alleged *to have possessed the firearm.*" (emphases added).  While it is true that the State attempted to prove the identity of the person who dropped the firearm by way of DNA evidence, in asserting his second hypothesis of innocence, Defendant focused his argument on the fact that the State was unable to prove beyond a reasonable doubt that Defendant's DNA was deposited on the firearm on March 13, 2015.  Thus, Defendant equated the State's inability to prove the date on which Defendant's DNA was deposited on the gun with the inability to prove Defendant possessed the firearm on March 13.

Although Defendant is correct that the time of possession of the firearm was essential in this case, Defendant's timing argument regarding the *deposit* of his DNA does not create a reasonable hypothesis of innocence under the facts of this case.  Reasonable doubt was defined in the jury instructions as "not a mere possible doubt, a speculative, imaginary, or forced doubt."  Fla. Std. Jury Instr. (Crim.) 3.7.  Extrapolating from the definition of "reasonable" under the applicable jury instruction, a reasonable hypothesis of innocence is a hypothesis that is something more

than a theory that is possible, speculative, imaginary, or forced. Therefore, in this case, simply postulating speculative theories as to how Defendant's DNA may have been deposited on the firearm sometime prior to March 13, 2015 does not assert a reasonable hypothesis of innocence as to the crime of possession of a firearm by a felon.

Additionally, Defendant's argument regarding the *timing* of the deposit of his DNA on the firearm magazine is a bit of a red herring argument. There was certainly enough evidence to connect the firearm to the person who fled from the motorcycle officer. The motorcycle officer testified that after hearing the metallic noise and seeing a firearm on the ground a short distance from the car, he saw the fleeing suspect look back at the firearm on the ground. That establishes Defendant possessed a firearm that day, *if* there was other sufficient evidence to prove the identity of the fleeing suspect. In other words, the DNA evidence is simply a corroborating piece of evidence of identity, in addition to other evidence presented to the jury.

We agree with the State's arguments that the evidence was sufficient to allow the jury to decide whether Defendant was the person who fled. In addition to Defendant's DNA being found inside the firearm, there was evidence that (1) Defendant matched the suspect's race, height, and build, (2) the romantic relationship between Defendant and the daughter of the owner of the car, (3) the daughter was regularly using the car around the time the vehicle was stopped, (4) the daughter was the one who approached the officer and sought to retrieve the car shortly after the suspect fled, (5) a laundry receipt for Defendant's clothes was found in the car, (6) men's clothing was present on the back seat of the car, and (7) Defendant made numerous telephone calls to the daughter from jail after his arrest. The combination of all that evidence was sufficient to allow the jury to decide if Defendant fled from the officer on March 13, even without the DNA evidence. Finally, we agree with the State's argument that flight with the firearm before dropping it was evidence of consciousness of guilt.

We disagree with Defendant's argument that the State's evidence required an improper stacking of inferences in order to support guilt. *See Brown v. State*, 672 So. 2d 648, 650 (Fla. 4th DCA 1996) ("Circumstantial evidence is insufficient when it requires pyramiding of assumptions or inferences in order to arrive at the conclusion of guilt.") There is a difference between putting pieces of a puzzle together and stacking inferences and assumptions. In this case, there were multiple pieces of evidence for the jury to consider to link Defendant to the crime. We are not persuaded by Defendant's argument that impermissible inference stacking would have to be used for the jury to find Defendant guilty beyond a reasonable doubt.

8

We conclude the trial court erred in granting the renewed motion for judgment of acquittal. We reverse and remand for the trial court to reinstate the jury's verdict and to proceed accordingly.

*Reversed and remanded for further proceedings.*

TAYLOR and CIKLIN, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***